AMERICAN FURNITURE COMPANY, INC. d/b/a American of Martinsville, Plaintiff-Appellee,

v.

INTERNATIONAL ACCOMMODATIONS SUPPLY, etc., et al., Defendants,

Louisiana State Employees' Retirement System, Defendant-Appellant.

No. 79–2757.

United States Court of Appeals, Fifth Circuit.

Unit A

March 11, 1981.

William J. Guste, Jr., Atty. Gen., Louis M. Jones, New Orleans, La., for defendant-appellant.

Young & Mars, Theodore A. Mars, Jr., William Waller Young, III, New Orleans, La., for plaintiff-appellee.

Before GOLDBERG, POLITZ and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

The Louisiana State Employees' Retirement System (LASER) appeals a judgment ranking a vendor's privilege asserted by plaintiff, American Furniture Co., Inc. (American), above LASER's mortgage and granting American judgment against LASER for $93,601.33, together with interest, costs and attorney's fees. Finding that this controversy has been previously resolved by the state courts, we reverse and dismiss American's complaint.

*Context Facts*

In March of 1973 American, a Virginia corporation, sold and delivered certain furniture and furnishings for use in the International American Red Carpet Inn (the Inn), Metairie, Louisiana. The items were invoiced to International American Co., Inc., d/b/a International Accommodations Supply, a Louisiana corporation solely owned by Gaspar Occhipinti.

The Inn belonged to Campo Realty Co., Inc., a Louisiana corporation solely owned by John J. Campo, who also solely owned Campo Hardware Co., Inc., another Louisiana corporation. American declined to ship the furniture until payment was guaranteed by Mr. Campo and Campo Hardware. After these guarantees were executed, American delivered the furniture to the Inn and into the possession of Campo Realty.

Mr. Campo incorporated Campo Realty for the express purpose of building the Inn and borrowing the funds necessary for the project. International American was organized by Messrs. Campo and Occhipinti to serve as the vehicle for obtaining wholesale prices for the furniture, fixtures and supplies needed in the Inn. Mr. Campo represented International American in the negotiations with American.

In January and February 1974, Borg-Warner Acceptance Corporation loaned Campo Realty substantial sums which were secured by chattel mortgages on the contents of the Inn, including the furniture subject to this suit. In July 1974, Campo Realty mortgaged the Inn and all of its furniture and appurtenances to LASER as security for a four million dollar loan. Borg-Warner Acceptance Corporation subordinated its chattel mortgages to the LASER mortgage.

### The Course of Litigation

Payments due LASER and American became delinquent and both creditors repaired to the judicial arena. In November 1974, American invoked diversity jurisdiction and filed suit on open account against International Accommodations Supply, Campo Hardware and John Campo, seeking recognition of its vendor's privilege and judgment for $93,601.33, plus interest, costs and attorney's fees. In December 1974 LASER filed suit *via executiva,* foreclosing on its mortgage on the Inn and its contents, in suit entitled "Louisiana State Employees' Retirement System vs. Campo Realty Company, Inc.," bearing number 170–174 on the docket of the 24th Judicial District Court, Jefferson Parish, Louisiana. The Sheriff seized the Inn and its contents.

A number of creditors of the Inn, including American, intervened in the foreclosure action. Early in 1975 American filed a petition and then a supplemental petition in intervention in the state court proceedings, asking that its vendor's privilege be recognized and held to prime LASER's mortgage, and that its claim for the balance of the purchase price, interest, costs and attorney's fees, be honored.

The judicial processes continued in both fora. In January 1975, as a corollary to its state court intervention, American filed a supplemental and amended petition in the instant diversity suit, reiterating its original petition and making Campo Realty and LASER additional defendants. In its prayer American sought recognition of its vendor's privilege and a declaration that its privilege primed all mortgages on the property. American also sought judgment against the original three defendants and the additional two defendants for $93,-601.33, plus interest, costs and attorney's fees.[1]

### State-Federal Parallel

With the intervention by American in the state court foreclosure proceeding and its naming of LASER as an additional defendant in the open account suit in federal district court, we see the alignment of parties and espousal of issues running parallel in the state and federal courts. The judicial sauce thickens when in December 1975, American caused the Marshal to seize the furniture which was already under seizure by the Sheriff in LASER's foreclosure suit. About ten months later, in September 1976, LASER moved for release of the federal seizure and posted a bond as security for the release. After securing the release, the

---

1. The pleadings are specific in this regard. American has stated in filings in the record, however, that it seeks only a judgment recognizing the priming position of its vendor's privilege. For example, in its Memorandum in Opposition to Motion of Louisiana State Employees' Retirement System to Dismiss filed March 12, 1976, it states (R.Vol. II, p. 206): "The Retirement System is a 'third party defendant' but no judgment is sought against it, American has simply joined the Retirement System because it has the property seized and is asking that the Retirement System rank its privileges before this Court." Again, in a supplemental memorandum in opposition to LASER's motion to dismiss filed January 31, 1977 (R.Vol. II, p. 293), we find: "Counsel for American emphatically states that no judgment is sought against the State of Louisiana or the Retirement System, we are simply asking this Court to rank our vendor's lien superior to the mortgage of the Retirement System."

state foreclosure suit was again put in motion. Ultimately, bidding from the vantage of its mortgage position, LASER purchased the Inn at Sheriff's sale.

The judicial wheels continue to turn, grinding slowly but, as has been said, exceedingly fine. The state district court considered the various interventions and found that one, the intervention by Robertson Factories, Inc., primed LASER's mortgage. By judgment rendered May 2, 1978, the state district court honored that privilege. As to the claims of the other intervenors, including American, the state district judge found: "The other claims brought by intervenors and all other claims rank after the chattel mortgage held by plaintiff; said claims to such movable items being lost." Pursuant to this finding the state court decreed: "IT IS FURTHER ORDERED that all other claims be and they are hereby denied." The decision as it related to Robertson Factories was reviewed and reversed by the Fourth Circuit Court of Appeal of Louisiana on May 4, 1979 (on rehearing March 11, 1980). The result of the state district court judgment, as reversed in part on appeal, is the upholding of the primacy of LASER's mortgage over all intervenors, including American. *Louisiana State Emp. Retirement v. Campo Rlty.,* 380 So.2d 1377 (La.App.1980).

Meanwhile, on the federal side of the ledger, hearings were held before the magistrate and district court on various motions, including a motion to dismiss filed by LASER and a motion for summary judgment filed by American. Both were denied. The matter proceeded toward trial on the merits but prior to trial, a judgment based on a stipulation of some of the parties was entered on February 14, 1977. This judgment was in favor of American and against International Accommodations Supply, Campo Hardware and Campo Realty,[2] for $93,601.33 plus interest, costs and contractual attorney's fees of 25%.

After this stipulation, the only issue remaining in the diversity suit was the dispute between American and LASER, *i.e.,* whose claim primed, American's unrecorded vendor's privilege or LASER's later recorded mortgage. That issue was tried to the magistrate and reviewed by the district judge, who modified and adopted the magistrate's findings. On July 2, 1979, judgment declaring that American's vendor's privilege primed LASER's mortgage and granting American judgment against LASER for $93,601.33, plus interest, costs and attorney's fees was entered. LASER noticed its appeal, thereafter filing a Motion to Correct Judgment on which no action is apparent. The district court stayed its judgment pending appeal.

LASER assigns multiple errors on appeal. We pretermit LASER's specifications of error for we find in this record an uncontroverted state of facts mandating reversal of the district court's judgment.

The record before us is replete with references to the state court proceedings, from the filing of the foreclosure suit up through and including the opinion on hearing rendered by the Louisiana Fourth Circuit Court of Appeal on May 4, 1979. Exhibits listed in the pre-trial order include pertinent parts of the pleadings in the state foreclosure suit. We may and must be cognizant of the decisions rendered by the Louisiana state courts in this proceeding. In this diversity case, as in every diversity case, we are to apply the substantive law of Louisiana as found in its codes and legislative acts as articulated and explained by the Louisiana courts. In a typical diversity case, in our search for prevailing law, we would be guided by decisions of the Louisiana appellate courts. In this particular case there is decidedly more. We have before us a final, definitive[3] judgment of the Louisiana courts on the very issue presented in this diversity case, *i.e.,* the ranking of

---

2. John J. Campo died during the course of the proceedings and there was no substitution of his succession as a defendant. American abandoned its claim against Mr. Campo.

3. Final in that it addresses the merits of an issue; definitive in that the time for appeals or other appellate review has elapsed. La.Code Civ.Proc. arts. 1841 and 1842.

American's vendor's privilege and LASER's mortgage.

## The Thing Adjudged

■ The state district court holding, undisturbed on appeal, is that LASER's mortgage primed American's vendor's privilege. Both American and LASER were parties to that litigation; the issue of ranking was directly before the state court and necessarily inherent in its decision. American chose to intervene in the state proceeding. It chose to present the issue of the ranking of its privilege to the state court. It may not later pursue its position in the federal court diversity suit as if the state court had never addressed the question. A federal district court does not have appellate jurisdiction to review, modify or nullify a final order of a state court. *Kimball v. The Florida Bar,* 632 F.2d 1283, (5th Cir.1980); *Lampkin-Asam v. Supreme Court of Florida,* 601 F.2d 760 (5th Cir.1979).

■ We are cognizant that *res judicata,* as such, has not been specially pled. Fed.R. Civ.P. 8(c). In the posture of this case, however, where all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention to the issue by technically correct and exact pleadings. We do so *sua sponte. W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, Inc.,* 186 F.2d 236 (2d Cir.1951); *Wilson v. United States,* 166 F.2d 527 (8th Cir.1948).[4]

■ In *Blonder-Tongue Labs. v. University Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788, 812 (1971), the Supreme Court observed: "The purpose of [requiring *res judicata* and collateral estoppel to be pled] is to give the opposing party notice of the plea of estoppel and the chance to argue, if he can, why the imposition of an estoppel would be inappropriate."

In this case, American can claim no surprise or prejudice for failure of scrupulous compliance with Rule 8(c). American's pleadings and memoranda address the existence of the state court proceedings and explicate its involvement in those proceedings. There can be no suggestion of prejudice because we take into account that which has been brought before us by both American and LASER. In any event, we have before us LASER's Motion to Dismiss. This motion may be taken to raise the plea of *res judicata* when we consider the record before us on this appeal. *See Thomas v. Consolidation Coal Co.,* 380 F.2d 69 (4th Cir.1967); *Williams v. Murdoch,* 330 F.2d 745 (3d Cir.1964); *Suckow Borax Mines Consol. v. Borax Consol., Ltd.,* 185 F.2d 196 (9th Cir.1950).

■ The requisites for a plea of *res judicata* are set out in our decision in *Stevenson v. International Paper Co., Mobile, Alabama,* 516 F.2d 103, 108–09 (5th Cir.1975):

> For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits. *Wasoff v. American Automobile Ins., Co.,* 451 F.2d 767 (5th Cir.1971). If these elements are established, then the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented.

Applying these criteria to the case at bar, we are inexorably led to the conclusion that the state court adjudication bars subsequent consideration of the issue in federal

---

4. For an excellent discussion of excusal of the pleas of *res judicata* and collateral estoppel from the strictures of Rule 8(c), *see Overseas*

*Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499, 512–15 (E.D.Mich.1974).

court. When the state court judgment of May 2, 1978, became definitive, the matter ended. The district court should have granted LASER's Motion to Dismiss.

The decision by the district court is REVERSED; the demands of American against LASER are DISMISSED.