Revised July 3, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 01-30266

---

ENERGY DEVELOPMENT CORPORATION

Plaintiff-Appellee

VERSUS

MICHAEL X. ST. MARTIN; VIRGINIA RAYNE ST. MARTIN;
QUALITY ENVIRONMENTAL PROCESSES, INC.

Defendant-Appellants

THE LOUISIANA LAND AND EXPLORATION COMPANY

Defendant - Counter Plaintiff

VERSUS

SAMUEL J. STAGG, III, M.D.; husband of; JULIE M. STAGG; JAMES G.
FISTER, husband of; LINDA F. FISTER; BAYOU AREA CHILDREN'S
FOUNDATION, INC.

Counter Defendants - Appellants

---------------------------------------------------------------

ENERGY DEVELOPMENT CORPORATION

Plaintiff-Appellee

VERSUS

MICHAEL X. ST. MARTIN; VIRGINIA RAYNE ST. MARTIN;
QUALITY ENVIRONMENTAL PROCESSES, INC.

Defendant-Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

June 27, 2002

ON PETITION FOR REHEARING

Before GARWOOD, JOLLY, DAVIS, Circuit Judges.

PER CURIAM:

In response to the defendants' petition for rehearing, we substitute the following in place of the opinion as originally issued:[1]

We AFFIRM the judgment of the district court essentially on the basis of its careful Memorandum Opinion dated December 12, 2000.[2] For the reasons stated below, we decline to consider the res judicata defense which is raised for the first time on appeal.

I.

Energy Development Corporation ("EDC") filed two actions (later consolidated) seeking a declaratory judgment establishing its ownership of mineral rights underlying property located in the Lake Hatch - Sunrise Field area of Terrebonne Parish, Louisiana. The defendants in only one of the cases - CA 98-3395 - have asserted a res judicata defense. These defendants, the St. Martin Group (Michael X. St. Martin; Virginia Rayne St. Martin; Quality Environmental Processes, Inc.), who are surface owners of a 170 acre tract of land also claim ownership of minerals underlying that property. The St. Martin Group conceded at trial the existence of certain instruments filed of record upon which EDC bases its claim

---

[1]This opinion does not resolve the petition for rehearing en banc which is pending before the court.

[2]Energy Development Corp. V. St. Martin, 128 F.Supp. 2d 368(E.D.La.2000).

of a mineral servitude. However, they disagree with EDC's interpretation of those instruments as to when and whether they were effective to convey mineral servitudes to EDC. They also argue that any mineral servitude conveyed has prescribed and the minerals have reverted to them as surface owners of the land.

Plaintiff EDC's claim of ownership of the minerals at issue is based on a Mineral Conveyance dated May 3, 1971, effective January 1, 1971 (the "1971 Mineral Conveyance"), to its predecessor Pelto Oil Company ("Pelto"). In that transaction, EDC contends that Pelto acquired a single, large contiguous mineral servitude covering the tracts at issue in this case and other lands and that the servitude has been maintained by operations and production on the contiguous acreage described in the 1971 Mineral Conveyance. The defendant surface owners dispute EDC's ownership of mineral rights citing (1) a 1966 conveyance of minerals which they claim included an area which severed the contiguity of any servitude EDC/Pelto acquired in 1971, (2) ten year prescription of non-use, and (3) their claim that the description in the 1971 Mineral Conveyance was inadequate to convey anything to EDC's predecessor in title. EDC counters that the 1966 mineral conveyance, even if effective as claimed by the St. Martin Group, does not sever the servitude it acquired in 1971.

A brief history of the chain of title is required to understand the issues. In 1966, Southdown, Inc. conveyed to Southdown Exploration, Inc. a mineral servitude covering eight

3

tracts of land, one of which was an area designated as the "Productive Area", (the "1966 Mineral Conveyance"). In addition to transferring title to the minerals in the Productive Area, the 1966 Mineral Conveyance obligated Southdown to convey to Southdown Exploration mineral rights as to certain listed sands within an area described as the "Protective Area" if production were achieved from them (the "Protective Area Clause").[3] The Protective Area surrounds the Productive Area on three sides. In 1970, Southdown, Inc. conveyed to Southdown Lands, Inc. fee title to properties listed on an Exhibit A to that instrument (the "1970 Mineral Conveyance"). Exhibit A described the properties conveyed by reference to previously recorded documents, including a 1944 Mortgage by a prior owner in the chain of title, Realty Operators, Inc. The described property included the Productive Area, the

---

[3]      The Protective Area Clause reads as follows:
As an essential and integral part of the consideration paid for this conveyance, Grantor binds and obligates itself to convey to Grantee, from time to time as required, all of its right, title and interest in and to the oil, gas and other minerals in each Known Productive Sand when and if such sand is established to be productive or capable of production in the Protective Area. . . . If and when any Known Productive Sand is established to be productive or capable of production within the Protective Area as above provided, Grantor shall then be obligated to convey to Grantee the mineral rights in such Known Productive Sand as to the entirety of that Protective Area. . . . Each obligation to make such additional mineral conveyances as to Known Productive Sands shall arise immediately and automatically whenever any Known Productive Sand is established to be productive or capable of production in any portion of the Protective Area as provided above . . . As heretofore provided, conveyances shall be made from time to time whenever the conditions set forth above shall occur . . .

4

Protective Area and surrounding areas.

Southdown Lands, Southdown, Inc., and Realty Operators (but not Southdown Exploration, the transferee in the 1966 Mineral Conveyance) are all predecessors in title to all parties to this litigation. In 1971, Southdown Lands conveyed to EDC's predecessor, Pelto Oil Company ("Pelto"), a mineral servitude which EDC asserts covers a large contiguous tract which surrounds the Productive Area, includes the Protective Area and encompasses all tracts in this case (the "1971 Mineral Conveyance"). The conveyance excepted interests that had been previously conveyed. St. Martin Group contends that the servitude in the Protective Area was conveyed in 1966 and therefore that property was excepted from the 1971 conveyance. The 1971 Mineral Conveyance contained no property description, but rather incorporated by reference the 1970 Conveyance, which as stated above incorporated the description from the 1944 Mortgage. The 1944 Mortgage describes the tracts at issue by section, township, plantation name, and by frontage on the bayou and adjacent lands.

EDC contends that the large contiguous mineral servitude it acquired in 1971 covering the Protective Area, the tracts at issue in this case and other lands has been maintained by operations and production on the acreage described in the 1971 Mineral Conveyance.[4] The defendant surface owners (including the St.

---

[4] Under Louisiana law, operations anywhere on a servitude will maintain the entirety of a contiguous servitude. La. R.S. 31:63.

Martin Group) dispute EDC's ownership of mineral rights on a number of grounds. First, they argue that EDC did not acquire any minerals in the Protective Area in the 1971 Mineral Conveyance, based on their conclusion that the Protective Area had been previously conveyed to others in the 1966 Mineral Conveyance. Second, they argue that excepting the Protective Area from the area conveyed to EDC / Pelto in 1971 severs the area into two noncontiguous mineral servitudes: an area to the south of the Protective Area on which mineral operations were conducted and an area to the northeast of the Protective Area on which the defendants' surface tracts are located. According to St. Martin, this is significant because once the Protective Area is excluded from EDC's servitude and the servitude is severed, mineral operations on the southern portion of the tract could not maintain the servitude on defendants' acreage located to the northeast of the Protective Area. Third, the defendants argue that the property description in the 1971 Mineral Conveyance was inadequate to convey anything to EDC's predecessor in title.

Assuming that defendants are correct that the Protective Area was conveyed to others in 1966, so that the Protective Area is excluded from the 1971 Mineral Conveyance, EDC argues that its servitude remains intact and is not severed. EDC argues that it established a 41 foot corridor along the section line between

_____

A mineral servitude prescribes after ten years of non-use. La. R.S. 31:27.

6

Sections 59 and 60 that connects the northeastern part of the larger servitude with the southern portion. All parties agree that if EDC establishes a single contiguous servitude, operations on the southern portion of the servitude would be sufficient to maintain the entire servitude. The first important issue presented to the district court was whether the 1966 Mineral Conveyance conveyed the property it described as the Protective Area.

The district court found that the language of the 1966 Mineral Conveyance created a contingent obligation to convey, not a present conveyance of a mineral interest. Thus, it found that no mineral interests were conveyed in the Protective Area by the 1966 Mineral Conveyance and the Protective Area was included within the area conveyed to EDC / Pelto in the 1971 Mineral Conveyance. The district court also found that the description in the 1944 mortgage, which description was incorporated by reference into the May 3, 1971 Mineral Conveyance, was sufficient to convey immovables under applicable Louisiana law. Based on this premise, the court found that mineral activities in the southern portion of the contiguous tract maintained the servitude on the entire tract, including the St. Martin Group's property. Accordingly, it awarded judgment in favor of EDC on all issues. The defendants appeal and, relevant to our discussion here, raise the defense of res judicata for the first time on appeal.

## II.

During the pendency of this case in the district court, two

7

suits between some (but not all) of the parties in this suit were proceeding in two separate Louisiana state courts, one in Terrebonne Parish and one in Jefferson Parish.[5] The St. Martin Group asserts the judgment in the Jefferson Parish suit as res judicata over this federal action. EDC and the St. Martin Group were parties to the Jefferson Parish case. The Jefferson Parish court was presented with the question of mineral ownership of property different from the property at issue in these consolidated cases. The mineral servitude in question in that suit was located entirely within the Protective Area. The Jefferson Parish Court's decision differed with the court below in three important respects. The Jefferson Parish court concluded that: (1) The 1966 mineral conveyance effectively conveyed to third parties a mineral servitude and other mineral rights in the Protective Area of the Sunrise Field, (2)the mineral servitudes or mineral rights conveyed by the 1966 Mineral Conveyance have been extinguished by prescription based on ten (10) years nonuse, and these interests have reverted to the surface owners, and (3) the omnibus property description based on the 1944 mortgage and attached as Exhibit 'A'

_____

[5] Prior to the institution of these suits in federal court, Energy Development corporation initiated a suit captioned Energy Development Corporation v. Quality Environmental Processes, Inc., Michael X. St. Martin and Virginia Rayne St. Martin, No. 511546, 24th Judicial District Court, Jefferson Parish Louisiana. Energy Development Corporation and the St. Martin Group were also named as defendants in a concursus proceeding filed by Mandalay Oil & Gas, L.L.C. and Voyager Petroleum, Inc., No. 123320, 32nd Judicial District Court, Terrebonne Parish, Louisiana.

to the May 3, 1971 mineral conveyance was not an adequate description to effect a conveyance of the property described in the 1944 mortgage. (The Terrebonne Parish Court reached the opposite conclusion in the suit proceeding in that jurisdiction; it agreed with the decision in the federal district court.)[6]

In contrast to the final judgment in the Jefferson Parish case, initial proceedings were in favor of EDC. In June 1998, the Jefferson Parish court found in favor of the St. Martin Group on

_____

[6] Judgment in the Terrebonne Parish suit was entered in favor of EDC on September 29, 2000. That case is currently on appeal to the Louisiana 1st Circuit Court of Appeal. The Terrebonne Parish case was a concursus proceeding to resolve the ownership of minerals as to a tract of land located partially within and partially outside the Protective Area. EDC and the St. Martin Group were among the parties to that litigation. The Terrebonne Parish court held that the Protective Area Clause created a conditional obligation to convey mineral rights subject to a suspensive condition, not a present transfer of a mineral servitude or other mineral right as to the Protective Area. Accordingly, in the 1966 Mineral Conveyance, it held that Southdown, Inc. received a mineral servitude on the Protective Area subject to the obligation to make conveyances of mineral rights as to the listed sands to Southdown Exploration if the listed conditions were met. Southdown, Inc. could then convey its servitude, subject to the obligation, to Pelto by the 1971 Mineral Conveyance. The Terrebonne Parish court also noted that even if the 1966 Mineral Conveyance created a mineral servitude or other mineral right within the Protective Area, it was clear that any such servitude or right would be limited to the twenty "Known Productive Sands" listed in the 1966 Mineral Conveyance as to which the Protective Area Clause applied. Such horizontal division would not prevent the 1966 Mineral Conveyance from conveying a mineral servitude as to all other horizons within the Protective Area to Southdown, Inc. Horizontal stratification of the servitude within the Protective Area would not prevent contiguity with the remainder of the servitude conveyed in the 1971 Mineral Conveyance. It also rejected the St. Martin Group's claim that the 1971 Mineral Conveyance failed to create a mineral servitude in favor of Pelto / EDC for lack of an adequate property description.

9

Summary Judgment. The Louisiana 5th Circuit reversed and remanded in May, 1999. In its first opinion in this case, 734 So. 2d 965 (La. Ct. App. 5 Cir. 1999), the Louisiana 5th Circuit found the 1966 Mineral Conveyance conveyed only "a conditional future interest in the listed sands" and that because "the 1966 obligation was limited to specific sands in the Protective Area," it found that "there still existed mineral rights capable of being alienated in the Protective Area by the 1971 conveyance." However, it remanded for further proceedings to resolve "questions of material fact as to the nature, extent and prescription of EDC's mineral rights in the Protective area (the St. Martin's Tract) pursuant to the 1971 conveyance," more specifically, "whether the drilling activity described in the Hebert affidavit (the 36 wells) over the whole of the 1971 conveyance area interrupts prescription of the mineral rights granted by the 1971 conveyance on the St. Martin tracts." On remand, the Jefferson Parish court heard additional evidence and entered the judgment described above on December 17, 1999. EDC appealed and the Louisiana Fifth Circuit affirmed on December 4, 2000, 777 So. 2d 481 (La. Ct. App. 5 Cir. 2000). This was eight days before the district court issued its Memorandum Opinion in this case on December 12, 2000 and over a month before it entered judgment on January 17, 2001. The Louisiana Supreme Court denied EDC's application for writs on March 9, 2001. 786 So. 2d 734 (La. 2001)

Based on this chronology, the St. Martin Group could clearly

10

have raised their res judicata defense before the district court. Comment (d) to Louisiana's res judicata statute, La.R.S. 13:4231, states that a final judgment is one which disposes of the merits of the case in whole or in part. Therefore, "the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal." La.R.S. 13:4231, comment(d). Case law applying this concept appears to distinguish between when a judgment is final for res judicata purposes and when it acquires the authority of a thing adjudged. See Avenue Plaza, L.L.C. v. Falgoust, 676 So.2d 1077 (La. 1996) ("The appellate court judgment . . . affirmed the defendant's eviction. That judgment was a final judgment which became res judicata and conclusive between the parties when it was rendered, with the exception of appeal or other direct review. LSA-R.S. 13:4231. The judgment acquired the authority of the thing adjudged and became final and definitive when this court denied certiorari. La. C.C.P. art. 2166D.") See also Tolis v. Board of Supervisors, 660 So. 2d 1206, 1207 (La. 1995). Accordingly, the judgment in the Jefferson Parish suit appears to have been final for res judicata purposes as early as December 17, 1999, when the Jefferson Parish court entered judgment in favor of the St. Martin Group and certainly no later than December 4, 2000, when the Louisiana 5th Circuit Court of Appeals affirmed the judgment of the district court. Both of these dates precede the federal district court's decision in this case.

11

III.

Although the district court record is replete with references to both the Jefferson Parish suit and the Terrebonne Parish suit, the defendants do not argue that they raised the defense of res judicata or collateral estoppel before the district court. Rather, they carefully avoid making this argument and assert that res judicata may properly be considered for the first time on appeal, relying on Jackson v. North Bank Towing Corp., 213 F.3d 885 (5th Cir. 2000); Russell v. Sunamerica Secur., Inc., 962 F.2d 1169 (5th Cir. 1992); and American Furniture Co. v. International Accommodations Supply, 721 F.2d 478 (5th Cir. 1981).

Federal Rule of Civil Procedure 8(c) lists res judicata as one of the defenses that must be affirmatively pled. Our decisions in the above cases start from the premise that failure to raise this defense in the district court generally precludes the district court and appellate courts from considering the defense. Id. and Exxon Corp. v. Texas Motor Exchange, Inc., 628 F.2d 500, 507 (5th Cir. 1980). However, these cases also recognize that in a narrow, well-defined class of cases, the defense of res judicata may be considered for the first time on appeal. These cases hold that an appellate court can address res judicata for the first time on appeal, but only to affirm the district court's judgment and only if all of the relevant facts are contained in the record and are uncontroverted. Jackson, 213 F.3d at 890-891; Russell, 962 F.2d at 1172. St. Martin asserts the defense to reverse the district

12

court.

One decision of this court has allowed a party to assert res judicata for the first time on appeal to reverse a district court judgment. American Furniture, 721 F.2d at 482. However, it reiterated the rule that this can only be done "where all of the relevant facts are contained in the record before us and all are uncontroverted." Id. American Furniture addressed the conflict between judgments in parallel proceedings in state and federal courts.[7] The Louisiana state court held that one party's mortgage primed the claims of all intervenors. The judgment of the federal district court held that the vendor's lien of a party, who was also an intervenor in the state suit, primed the mortgage being foreclosed upon in the state court suit. Today's case is distinguishable from American Furniture in a number of respects.[8] For reasons we explain below, the most obvious reason American Furniture does not require us as an appellate court to apply res judicata when the defense was not asserted in the district court is that facts necessary for the application of the defense are not

---

[7]  In American Furniture, the state court held the American Furniture's asserted vendor's lien on furniture and carpet installed in a hotel ranked after the chattel mortgage on that hotel. American Furniture, 721 F.2d at 481. The federal district court held that American Furniture's vendor's lien primed the mortgage. Accordingly, this court was faced with rulings that directly conflicted as to a single property.

[8]  Significantly, our district court found that neither the Jefferson Parish suit nor the Terrebonne Parish suit were parallel actions to this proceeding.

13

found in the trial court record and are not uncontroverted.

The record in the district court reveals that the Jefferson Parish suit adjudicated the ownership of minerals underlying a tract of land that the parties stipulated was located entirely within the Protective Area. The tracts at issue in this case lie entirely outside the Protective Area. The 1966 Mineral Conveyance and the 1971 Mineral conveyance appear in the chain of title of all tracts in both cases. Accordingly, the federal action and the Jefferson Parish action have two potential common issues: (a) whether the Protective Area was conveyed in the 1966 Mineral Conveyance, and (b) whether the 1971 Mineral Conveyance has an adequate property description.[9] Although the St. Martin Group asserts both claim and issue preclusion, the essence of their request is to have the Jefferson Parish court's interpretation of the 1966 Mineral Conveyance and the 1971 Mineral Conveyance applied to the distinct tracts of land that are the subject of this case. This argument triggers section (3) of the Louisiana statute, which provides:

> Issue preclusion applies only to an issue actually litigated and determined and then only if the determination of that issue was essential to the judgment.

La. R.S. 13:4231.

The Jefferson Parish court addressed both common issues noted

---

[9] It appears that the Terrebonne Parish suit has the same common issues.

14

above. However, it is apparent from the face of the Jefferson Parish Judgment and Reasons for Judgment that the only issue essential to the judgment was the court's conclusion that the mineral rights burdening the Protective Area arose from the 1966 Mineral Conveyance, rather than the 1971 Mineral Conveyance. Once that decision was made, the Jefferson Parish court was able to conclude that the mineral rights at issue had prescribed based on ten years of nonuse and award judgment to the St. Martin Group. This is true because of two uncontroverted facts: (1) the property in the Jefferson Parish case was located entirely within the Protective Area, and (2) no production or drilling activity had been conducted between 1966 and 1976 to interrupt prescription of the servitude within the Protective Area. The Jefferson Parish court's interpretation of the 1971 Mineral Conveyance was therefore unnecessary to its conclusion.

Accordingly, in this case, the only potential preclusive effect of the Jefferson Parish judgment is its conclusion that the 1966 Mineral Conveyance conveyed mineral rights in the Protective Area. Applying that determination to this case would require us to treat that area as excepted from the servitude conveyed in the 1971 Mineral Conveyance. But accepting this determination does not clearly change the result reached by the court below, because a factual dispute remains as to whether removing the Protective Area from EDC's servitude severs the servitude into two noncontiguous tracts. EDC produced evidence that contiguity was maintained

15

because a narrow 41 foot corridor connects the southern and northwestern portions of the property subject to the servitude.

EDC argued in the district court (and in this court) that contiguity between these tracts was maintained by this corridor. This argument is based on evidence that the western boundary of Waterproof Plantation, which is also the western boundary of EDC's servitude in that area, extends 41 feet to the west beyond the west section line of Section 60, Township 17, Range 16 East into Section 59, Township 60, Range 16 East. Because the district court found that no transfer was effected by the 1966 instrument it was unnecessary for the district court to resolve this issue. The district court's opinion observes, however, that this boundary, (though not the depth of the extension into Section 59), was established by the testimony of the defendant's expert. The defendants counter that their expert provided actual surveys negating plaintiff's claims of one contiguous property. As far as we can tell from the various opinions issued in the Jefferson Parish case, this issue was never presented or considered in that lawsuit.

This factual dispute precludes application of issue preclusion in this case. Our cases allowing consideration of res judicata or collateral estoppel on appeal do so only if "all of the relevant facts are contained in the record and are uncontroverted." As that is not the case here, we decline to consider the defendants' assertion of res judicata or collateral estoppel at this stage of

16

the litigation.

The petition for panel rehearing and all other outstanding motions in this case are DENIED.

AFFIRMED.