**CISCO SYSTEMS, INC.**

v.

**ALCATEL USA, INC. and Alcatel S.A.**

No. 4:03–CV–176.

United States District Court,
E.D. Texas,
Sherman Division.

Feb. 10, 2004.

Roger D. Sanders of Sanders, O'Hanlon & Motley, Sherman, TX, Herschel Tracy Crawford of Ramey & Flock, Tyler, TX, Barry C. Barnett of Susman Godfrey, LLP, Dallas, TX, Fred Irvin Williams of Akin, Gump, Strauss, Hauer & Feld, Austin, TX, Franklin Brockway Gowdy, Rollin B. Chippey, II, William Walker Friedman, Benjamin Patrick Smith, David W. Johnson, Christopher R. Banks, Steven R. Daniels of Morgan, Lewis & Bockius, Gregory L. Lippetz of Bingham McCuthchen, LLP, San Francisco, CA, for Plaintiff.

Michael Edwin Jones, John H. Minton, Jr., Earl Glenn Thames, Jr. of Potter Minton, Tyler, TX, Clyde Moddy Siebman of Siebman, Reynolds, & Burg, LLP, Sherman, TX, Thomas M. Melsheimer,

Matthew E. Yarbrough, Michael Brett Johnson, Neil J. McNabnay, of Fish & Richardson, PC, Dallas, TX, Ruffin B. Cordell of Fish & Richardson, PC, Washington, DC, for Defendants.

## *ORDER GRANTING CISCO SYSTEMS, INC.'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF DEFENDANT ALCATEL USA, INC.*

DAVIS, District Judge.

Before the Court is Plaintiff Cisco Systems, Inc.'s Motion to Dismiss or, in the Alternative, Sever and Stay Purported First Amended Counterclaim of Defendant Alcatel USA, Inc. (Document No. 60), Alcatel USA, Inc.'s Opposition to Cisco Systems, Inc.'s Motion to Dismiss or, in the Alternative, Sever and Stay Counterclaims (Document No. 66), and the parties' Replies and Sur–Replies. Having carefully considered the parties' filings and the applicable law, the Court **GRANTS** Cisco Systems, Inc.'s Motion to Dismiss Alcatel USA, Inc.'s First Amended Counterclaim.

### BACKGROUND

The instant controversy arose out of an underlying lawsuit between Alcatel USA, Inc. and Cisco Systems, Inc., where Alcatel unsuccessfully sued Cisco for acts of patent and copyright infringement and torts allegedly committed by Cisco.[1] As part of that case, Cisco counterclaimed, alleging, *inter alia*, various Sherman Anti–Trust Act violations, and that counterclaim was severed from the underlying case to form the instant cause of action.[2]

Defendant Alcatel now seeks, by way of its First Amended Counterclaim in this case, a declaration regarding the ownership of tangible property allegedly stolen from Alcatel. Specifically, Alcatel seeks declaration that it is the owner of the computer source code ("ALL.Z") allegedly taken by former Alcatel employee Sudi Beheshti as well as the business plan materials taken by former Alcatel employee John Adler. Cisco responds that Alcatel's purported First Amended Complaint and attendant Counterclaim assert precisely the same allegations that were the subject of the litigation dismissed by Judge Brown last December, which is now on appeal. As such, Cisco contends that Alcatel's claim should not be permitted under *res judicata* principles.

Alcatel counters that *res judicata* does not apply because the declaratory judgment claims assert rights that are substantively different from those asserted by Alcatel in the underlying trade secret/copyright case. Alcatel avers that, while the trade secret/copyright case addressed the theft of Alcatel's intangible intellectual property, *i.e.*, Alcatel's proprietary and confidential ideas and concepts, its instant Counterclaim addresses the theft of Alcatel's tangible property, *i.e.*, the computer source code taken by Ms. Beheshti and the business plan materials taken by Mr. Adler. Accordingly, Alcatel contends that its Counterclaim should not be dismissed.

### DISCUSSION

Plaintiff Cisco Systems, Inc. ("Cisco") brings its Motion to Dismiss Alcatel USA, Inc.'s First Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b). Specifically, Cisco contends the

---

**1.** Judge Brown granted summary judgment in favor of Cisco in the underlying case, *Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, (E.D. Tex. filed June 1, 2000). Alcatel appealed the decision, and that appeal is currently pending before the Federal Circuit.

**2.** *Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, Order, May 6, 2003 (E.D. Tex. filed June 1, 2000).

claim is "barred by the doctrine of *res judicata* and/or failure to state a claim." [3]

■■■ Generally, *res judicata* is an affirmative defense that must be pleaded, and failure to do so results in its waiver. Fed.R.Civ.P. 8(c). While the rule requiring that the defense of *res judicata* be affirmatively pleaded is generally strictly read and applied, a trial or appellate court may consider the issue *sua sponte* (1) where both actions are brought in courts of the same district, or (2) in situations in which all relevant data and legal record are before the court and demands of comity, continuity in law, and essential justice mandate judicial invocation of *res judicata* principles. *See, e.g., Mowbray v. Cameron County, Texas,* 274 F.3d 269, 281 (5th Cir. 2001) (citing *United Home Rentals, Inc. v. Texas Real Estate Comm'n,* 716 F.2d 324, 330 (5th Cir.1983)); *Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169 (5th Cir.1992) (citing *American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478, 482 (5th Cir.1981)).

■■■ The Fifth Circuit set out in *Stevenson v. International Paper Co.,* 516 F.2d 103, 108–09 (5th Cir.1975), the requirements for a *res judicata* defense. For a prior judgment to bar a subsequent action:

(1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both suits.

*Id.* If these elements are established, then the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit. *American Furniture,* 721 F.2d at 482.

Here, the parties agree that the first and second elements are satisfied, as the parties do not contest that Judge Brown had jurisdiction over the prior case and that he rendered a final judgment on the merits. Likewise, the third element is not disputed in that the parties are identical in both suits. At issue is the fourth element, that the same cause of action is involved in both suits.

■■■ To determine whether the two cases involve the same cause of action, the Fifth Circuit applies the transactional test enunciated in the Second Restatement of Judgments.[4] *See Nilsen v. City of Moss Point,* 701 F.2d 556, 560 (5th Cir.1983) (en banc). The critical issue under this deter-

---

3. The Court is mindful that "[w]hen matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." Fed. R.Civ.P. 12(b)(6); *Burns v. Harris County Bail Bond Bd.,* 139 F.3d 513, 517 (5th Cir.1998). However, both parties asked the Court to take Judicial Notice of Judge Brown's prior rulings and the parties' briefs in the underlying case, and the Court limited its review to those narrow matters in deciding this motion. Accordingly, the Court need not turn the Motion to Dismiss into a motion for summary judgment.

4. Section 24 of the Restatement provides in relevant part as follows:

(1) When a valid and final judgment rendered in an action extinguishes the plain-

tiff's claims pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. Restatement (Second) of Judgments § 24 (1982). Comment c to section 24 further explains as follows:

Transaction may be single despite different harms, substantive theories, measures or kinds of relief.... That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or

mination is whether the two actions under consideration are based on "the same nucleus of operative facts." *In re Howe,* 913 F.2d 1138, 1144 (5th Cir.1990). That the precise claim presented in the second case was not presented in the former case does not keep the "new" claim alive. *Nilsen,* 701 F.2d at 560. *Res judicata* bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication. *Id.* The claim is barred, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. *American Furniture,* 721 F.2d at 482. In other words, "one who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar." *Id.* (citing Restatement (Second) of Judgments § 24 comment c. (1982)).

■ Here, Alcatel attempts to posture its claim in various ways to circumvent the *res judicata* bar. First, Alcatel contends that its counterclaim is not barred because it seeks equitable, and not substantive, relief. However, Alcatel did seek equitable relief in the underlying suit, notably in the form of a constructive trust. There, as in the instant case, Alcatel's claim for equitable relief stemmed from the same nucleus of operative facts as the substantive claim for misappropriation of trade secrets, *e.g.,* the misappropriated source code and business plan materials, and specifically sought *the return of the property* it claimed Cisco had wrongfully misappropriated. *See Alcatel, USA, Inc. v. Cisco Systems, Inc.,* No. 4:00–cv–199, Compl., at

¶¶ 99–100, (E.D. Tex. June 1, 2000).[5] Moreover, as Cisco correctly points out and as demonstrated above, under Fifth Circuit precedent, a mere change in legal theory, *e.g.,* from trade secret misappropriation to declaratory relief as to the ownership of the appropriated materials, does not create a new claim or cause of action. Alcatel prosecuted its misappropriation claims before the Court, and those claims were dismissed on summary judgment. Because the factual predicates of Alcatel's newly proposed Counterclaim are based on the same nucleus of operative facts as those in the underlying suit, Alcatel is barred under *res judicata* principles from asserting them now, in any form.

Next, Alcatel tries to differentiate between the two cases substantively, claiming that the underlying suit dealt with the theft of its *intangible,* intellectual property, *i.e.,* Alcatel's proprietary and confidential ideas and concepts, while its present counterclaim addresses the theft of *tangible* property, *i.e.,* the allegedly stolen computer source code and business plan materials. Alcatel claims that, although the underlying complaint identified Ms. Behesti as an employee who disclosed Alcatel's proprietary, confidential and trade secret *information* regarding Alcatel's administrative software, Alcatel did not allege the theft of the actual source code comprising ALL.Z which she allegedly stole. Likewise, Alcatel claims that marketing and business plans were misappropriated, but not specifically alleged, because Alcatel believed Mr. Adler had transported information encompassing Trade Secret No. 7 to Cisco "in his head."[6] Alcatel argues that the declaratory judgment counterclaim is

would call for different measures of liability or different kinds of relief.
*Id.* § 24 cmt. c.

**5.** Alcatel later moved to dismiss its equitable claims, and the Court dismissed Alcatel's equitable claims *with prejudice. See Alcatel*

*USA, Inc. v. Cisco Systems, Inc.,* No. 4:00–cv–199, Order Regarding Alcatel's Mot. For Leave to File an Am. Compl., at 6, Apr. 15, 2002 (E.D. Tex. filed June 1, 2000).

**6.** Allegedly, Alcatel did not realize the specific theft until June 2002, when it discovered that

substantively different because it encompasses not just intangible ideas and concepts, but Ms. Beshesti's *specific theft* of approximately 500,000 lines of functional source code comprising ALL.Z and Mr. Adler's theft of specific documents comprising Alcatel's business plan materials.

However, the record below tells a different story. In both its Original and First Amended Complaints, Alcatel claimed that its "research and development of information, confidential trade secret information *and other properties*" had been misappropriated.[7] Moreover, in its underlying claim for equitable relief, Alcatel specifically sought *the return of the property* it claimed Cisco had wrongfully misappropriated. Most telling, is when ruling on Cisco's motion for summary judgment on Alcatel's conversion claim, the court noted that "Alcatel attempts to salvage its trade secret conversion claim by contending that many of the intangible trade secrets, while not necessarily embodied in a document, were nevertheless in tangible form at the time of the conversion."[8] Though Alcatel characterizes its counterclaim as a new claim, the Court finds that the action is predicated on the same nucleus of operative facts presented in the underlying suit and is, in fact, the same claim under the *Nilsen* transactional test.

Although the Court finds that all four elements listed by the *Stevenson* court are

present, the inquiry is not yet complete. Even if the two actions are the same under the *Nilsen* transactional test, *res judicata* does not bar this action unless Alcatel could and should have brought its claims in the former proceedings. *See In re Howe*, 913 F.2d at 1145; *D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir.1989) ("Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim could or should have been brought in the earlier litigation."). In the present context, the critical question for *res judicata* purposes is whether Alcatel could or should have asserted the claim in the earlier proceeding.

Alcatel argues that it could not have litigated the present claim in the earlier proceeding for several reasons. First, Alcatel contends that its declaratory judgment claims regarding the ownership of ALL.Z and the business plan materials arose after the start of the underlying case and did not become ripe for adjudication until Alcatel discovered that an actual controversy existed. Indeed, Alcatel claims that a declaratory judgment claim as to its rightful ownership of its property remaining in Cisco's possession was not ripe until June 2002, when it discovered the theft of the *specific property* in the form of the ALL.Z source code and business plan materials.[9] Alcatel contends that its declara-

---

Mr. Adler's entries in his Microsoft Journal on the backup tapes revealed similar slides to Alcatel's in his Power Point slides.

7. This language was used both in Alcatel's Original Complaint and, later, in its First Amended Complaint. *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, Compl., at ¶ 93, First Am. Compl, at ¶ 87 (E.D. Tex. filed June 1, 2000).

8. *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, Mem. Op. & Order on Cisco Systems, Inc.'s Mot. For Partial Summ. J. On Alcatel U.S.A., Inc.'s Conversion Claim [Doc. No. 626], at 7 (E.D. Tex. filed June 1, 2000).

9. According to Alcatel, on June 21, 2002, while undertaking a continuing review of voluminous electronic back-up tapes of Cisco's computer network provided to Alcatel during discovery in the underlying trade secret/copyright case, Alcatel discovered that a substantial portion of the administrative computer software used in a highly sophisticated piece of telephonic equipment manufactured by Alcatel (the OGX cross connect) had been taken and used at Cisco. Alcatel allegedly found specific evidence that former Alcatel employee, Ms. Behesti, had created a compressed electronic file named ALL.Z that contained over 2000 source file codes and nearly 500,-

tory judgment claims could not be pleaded hypothetically before this and that it could not sue to claim ownership of property it was not aware had been stolen. Basically, Alcatel argues that it had to wait for proof-positive of the specific stolen items and method of appropriation before its claim was ripe and could be adjudicated. The Court finds this argument unpersuasive.

■ In the declaratory judgment context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 896 (5th Cir.2000); *see also Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir.1993). The threat of litigation, if specific and concrete, can indeed establish a controversy upon which the declaratory judgment can be based. *Orix Credit Alliance,* 212 F.3d at 897 (citing *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 578 (7th Cir.1994) (finding that once a buyer sent "notice letter" informing manufacturer that suit would be filed in state court if dispute was not resolved, disagreement was no longer an abstract question and therefore was ripe for adjudication)). Here, Alcatel's filing of the lawsuit put Cisco on notice that it believed it had property that belonged to Alcatel. Alcatel claimed in both its underlying original and amended complaints that former Alcatel employees had appropriated property belonging to Alcatel. Alcatel sought to compel return of the property. Thus, Alcatel demonstrated an actual controversy between the litigants such that it cannot now claim that its inability at the

time of filing to determine the *specific* item or method of appropriation rendered its claim unripe until the alleged discovery. That Alcatel could and should have brought its claim for declaration of ownership of the stolen property in the underlying suit bars the claim now.

Alcatel further contends that it could not litigate the claim in the prior suit because, by the time that Alcatel discovered proof of the theft of the actual ALL.Z files and the business plan materials in June, 2002, the pleading deadline had passed. Alcatel blames its belated findings on Cisco's late production of voluminous electronic data. In support of its theory, Alcatel rehashes the tortuous discovery history regarding the production of the back-up tapes, by noting that the tapes were requested in July, 2001 but were not produced until October, 2001. According to Alcatel, when Neville Newman of S3 Partners began in independent review of the tapes in late February, 2002, he discovered that Cisco did not include a directory structure. Cisco provided Alcatel the directory structure in late March, 2002, as well as an additional set of back-up tapes. Alcatel then allegedly discovered ALL.Z on the back-up tapes on June 21, 2002, and substantially uncovered the facts surrounding the creation, downloading and use of ALL.Z in late June and early July, 2002.

However, this recount is akin to the argument Alcatel made before Judge Brown that Cisco's late production of the relevant back-up tapes resulted in Alcatel's inability to bring a copyright infringement claim in a more timely fashion. The Court was not persuaded then, and this Court is not persuaded now.[10] Judge Brown gave Alcatel no allowances for having sat on the

---

000 textual lines of Alcatel's source code for the OGX cross-connect. This file had allegedly been created by Ms. Behesti on February 24, 1999, the day she accepted an offer of employment from Cisco, a copy was emailed to her boyfriend, another Alcatel employee,

who then sent the email to her at Cisco where it was loaded onto Cisco's computer network.

10. In denying Alcatel's motion to add a cause of action for copyright infringement, Judge Brown opined, "Alcatel has expressly indicated, in at least a few instances, that it discover-

information between October, 2001, and late February, 2002, or for the period from March, 2002, until June, 2002, when Alcatel finally discovered the information, and this Court is not inclined to do so either.

Last, Alcatel claims that Cisco is estopped from raising a *res judicata* defense because Cisco actually invited a second lawsuit to address claims relating to Alcatel's stolen property. Alcatel points to a hearing where Cisco's counsel argued vehemently against inclusion of any testimony or materials related to ALL.Z in the case before Judge Brown and argued at the July 16, 2002 pre-trial hearing that claims relating to the "newly discovered theft" would present a new case. According to Alcatel, the fact that Cisco wanted this information and the alleged theft of the business plan materials to be severed into a new case estops it from raising the defense of *res judicata* now.

Contrary to Alcatel's assertion, the Court finds that Cisco did not "acquiesce" to this new counterclaim. Judge Brown ruled against Cisco and ordered that, "The ALL.z file should be included in this case." [11] Moreover, following Alcatel's own argument, then it, too, should be estopped from asserting its newly presented counterclaim. At the very same pre-trial hearing before Judge Brown, Alcatel

averred that should the Court permit the addition of the ALL.z file into that case, Alcatel insisted that "no new claims" would need to be added.[12] Indeed, Alcatel had already dismissed its equitable claims *with prejudice* and should not be permitted to raise them again here.

The Court finds that Alcatel's counterclaim seeking declaratory relief as to the ownership of the misappropriated property is a claim that could and should have been brought in the underlying lawsuit. Because its claims were already presented and unsuccessfully prosecuted in the underlying suit, Alcatel is not entitled to assert, even on a new theory, its claims in this successive action.

## CONCLUSION

For the reasons set forth above, the Court finds that Alcatel's counterclaim in the instant is barred by *res judicata*. Accordingly, Cisco Systems, Inc.'s Motion to Dismiss Alcatel USA, Inc.'s First Amended Counterclaim is **GRANTED**. Alcatel's First Amended Counterclaim is hereby **DISMISSED** with prejudice.

It is **SO ORDERED.**

---

ed the evidence of copying that supports its proposed claim for copyright infringement in late September or early October of 2001, most likely prior to the October 3rd deadline." *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, Order Regarding Alcatel's Mot. For Leave to File an Am. Compl., at 4, Apr. 15, 2002 (E.D. Tex. June 1, 2000). Because Alcatel could not demonstrate good cause for its untimely delay, Judge Brown indicated that no new causes of action would be allowed. *Id.* Alcatel argues that its instant counterclaim could not have been brought for this reason also. However, any blame attributed to Judge Brown's action seems to have come solely from Alcatel's own dilatory practice. Arguably, had Alcatel not sat on the

produced information without good cause for so long and made the request sooner than eight months past the pleading deadline, Judge Brown might have allowed Alcatel to add the copyright infringement cause of action and any other forms of relief available.

**11.** *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, No. 4:00–cv–199, Order, at 6, Aug. 12, 2002 (Doc. No. 902) (E.D. Tex. June 1, 2000). Moreover, Judge Brown gave Alcatel opportunities to supplement the summary judgment evidence regarding to the ALL.Z files before deciding the merits of the case on summary judgment. *Id.*, at 6–7.

**12.** *Id.*, at 2.