777 So.2d 481 (2000)
ENERGY DEVELOPMENT CORPORATION
v.
QUALITY ENVIRONMENTAL PROCESSES, INC., Michael X. St. Martin, and Virginia Rayne St. Martin.
No. 00-CA-314.
Court of Appeal of Louisiana, Fifth Circuit.
December 4, 2000.
Writ Denied March 9, 2001.
*482 A.J. Gray, III, The Gray Law Firm, Lake Charles, LA, John M. Mamoulides, Metairie, LA, Counsel for defendant-appellee.
James A. Barton, III, David R. Richardson, John F. Whitney, Barton Richardson, Canseco & Whitney, L.L.P., New Orleans, Louisiana, Raymond Hoffman, Jr., Metairie, Louisiana, Counsel for plaintiff-appellant.
Court composed of Judges SOL GOTHARD, CLARENCE E. McMANUS, and H. CHARLES GAUDIN, Pro Tem.
GAUDIN, Judge Pro Tem.
Plaintiff/appellant Energy Development Corporation ("EDC") appeals from a district court judgment extinguishing its mineral servitude and/or mineral rights on land owned by defendants/appellees Michael X. St. Martin and Virginia R. St. Martin ("St. Martin group") in Terrebonne Parish. Defendant/appellee Quality Environmental Processes, Inc. claims a mineral interest acquired from the St. Martins.
The trial judge in the 24th Judicial District Court found that the servitudes were extinguished by prescription based on 10 years of nonuse.
We affirm. A reversal in this complex boundary dispute would require an impermissible substitution of our judgment for that by the trial court, there being no manifest error.
Each side called a professional land surveyor. In a case-deciding credibility evaluation, the trial judge found the St. Martin group's expert more persuasive, particularly with regard to the single, contiguous nature of the area claimed by EDC as opposed to the noncontiguousness of the same property as advocated by the St. Martin group.
This case involves a dispute over mineral servitude and/or mineral rights on land known as the "Protective Area" and the "Productive Area" in the Sunrise Field Area. The "Productive Area" is situated within the "Protective Area."
In a deed dated August 31, 1966, Southdown, Inc. conveyed to Southdown Exploration, Inc., the right to oil, gas and other minerals within the "Productive Area." Southdown, Inc. was also obligated to convey rights, title and interest in and to any sand in the "Protective Area" when and if such sand is productive or capable of production of oil, gas or other minerals. Attached to and made part of the August 31, 1966 document (the consideration for which was $1,000.00) are eight maps or sketches but no surveys showing numerous areas in St. James, Lafourche and Ascension parishes as well as Terrebonne Parish. Also part of the August 31, 1966 deed is a listing of approximately 60 areas covered by the document.
By name change dated April 25, 1967, Southdown Exploration, Inc. became Southdown Burmah Oil Company. Southdown transferred 40 percent of all its assets, including the mineral servitude and mineral rights acquired under the August 31, 1966 deed, to Pelto Oil Company. By name change dated February 12, 1970, Southdown Burmah Oil Company became Burmah Oil Development, Inc.
On June 17, 1970, Southdown, Inc. sold its fee title interest to all of its land, including the lands located in all "Productive Areas" and "Protective Areas" to Southdown Lands, Inc. which, by deed dated May 3, 1971, purported to convey to Pelto Oil Company a mineral servitude covering all of its interest in and to all oil, gas and minerals in the lands then owned by Southdown Lands, Inc., including those lands located in the "Protective Area" of *483 the Sunrise Field Area. This deed contained this express exception:
"There is excepted from the conveyance here made all lands and mineral rights heretofore conveyed or transferred by Vendor or its predecessors in title to third parties or terminated by prescription."
Pelto Oil Company is the ancestor in title of EDC. The St. Martins acquired the land located in the Sunrise Field Area, subject to any mineral servitudes and mineral rights presently in existence, on June 23, 1992. Quality Environmental Quality acquired its ownership interest in 1994. As landowners, they are attempting to enforce the 10-year prescription of nonuse stated in LSA-R.S. 31:16, which is Article 16 of the Louisiana Mineral Code. EDC, claiming mineral servitudes, bears the burden of showing that its rights have been sufficiently used to prevent the accrual of prescription, as stated in Article 764 of the Louisiana Mineral Code.
Consideration for the May 3, 1971 conveyance to Pelto Oil Company was $100.00. Attached to this deed was a listing of 28 properties and five amendments, including this reference to lands concerned with the present case:

Terrebonne COB 496 Entry No. 383344
All of the other listings were in three State of Mississippi counties or in numerous Louisiana parishes other than Terrebonne.
On June 5, 1997, the St. Martin group informed EDC that it sought to extinguish any mineral rights EDC might have in the "Protective Area" due to a 10-year prescription of nonuse. In response, EDC filed a petition for declaratory judgment and permanent injunction on July 7, 1997. In the petition, EDC alleged that its mineral rights and servitudes were not extinguished by the terms of the 1966 conveyance, but rather were governed by the 1971 conveyance and had not prescribed by 10 years of nonuse. On August 5, 1997, the St. Martin group filed an answer and reconventional demand against EDC. On August 26, 1997, EDC filed an answer to the reconventional demand.
The St. Martin group filed a motion for summary judgment on February 2, 1998. EDC filed its motion for summary judgment on April 9, 1998. Both motions were heard on May 1, 1998. On June 15, 1998, the trial judge rendered written judgment with reasons granting the St. Martin group's motion for summary judgment and denying EDC's motion. The trial court ruled that the mineral servitudes and rights burdening the "Protective Area" stemmed from the 1966 conveyance and that these mineral servitudes and rights had been extinguished by prescription based upon 10 years of nonuse.
EDC appealed the June 15, 1998 ruling granting summary judgment in favor of the St. Martin group. On May 19, 1999, the Fifth Circuit Court of Appeal vacated the judgment of the trial court and remanded the case for further proceedings. This Court found that there were material issues of fact in dispute as to the nature, extent and prescription of EDC's mineral rights in the "Protective Area" pursuant to the 1971 conveyance to Pelto.
On remand, the merits of this case were heard on October 25-27, 1999. On December 17, 1999, the trial court issued its written judgment with reasons in favor of the St. Martin group and against EDC. The trial court ruled that the mineral servitudes and rights burdening the "Protective Area" of the Sunrise Field Area stemmed from the 1966 conveyance and that those mineral servitudes or rights had been extinguished by prescription based on 10 years of nonuse. The trial judge also found (1) that the area claimed by EDC was not one large contiguous area and (2) that the omnibus property description attached to the 1971 conveyance was not adequate to put third parties on notice as to which properties were being encumbered.
*484 On appeal, EDC assigns these district court errors:
(1) The trial judge refused to follow this Court's May 9, 1999 opinion in which was established "the law of the case,";
(2) The trial judge was wrong in rejecting EDC's proof of the nature, extent and (interruption of) prescription of its mineral rights in the subject "Protective Area"; and
(3) The trial judge erred in finding that the property description in the 1971 conveyance was omnibus and not adequate to put third parties on notice.

ASSIGNMENT NO. 1
EDC alleges that the trial court, on remand, erred in refusing to follow findings of this Court's May 19, 1999 opinion, which was established as the "law of the case." Under the "law of the case" doctrine, an appellate court will usually not reconsider its own rulings of law in the same case.
While we agree with this Court's previous ruling vacating summary judgment, we note that the entirety of the evidence was not before the trial court (or this Court) at that time. The thrust of and the only significant, lasting findings in the May 19, 1999 opinion were that material and untried issues precluded summary judgment and that a complete trial was necessary. The district judge, after a mandated, full trial was free to make findings independent of the May 19, 1999 remand decree.
In Day v. Campbell-Grosjean Roofing and Sheet Metal Corporation, 260 La. 325, 256 So.2d 105 (1971), the Louisiana Supreme Court discussed at length the "law of the case" concept and stated that while a court will generally decline to reconsider prior rulings, the policy applies only against those who have had their day in court. Before the merits of the instant case were heard on October 25-27, 1999, neither the EDC nor the St. Martin group had "their day in court."
At the full trial, various witnesses were called, including experts by each side, and numerous documents placed in evidence, including some not attached to the motions for summary judgment.
EDC argues that there are findings in the May 19, 1999 opinion binding the trial court on remand, findings which the trial judge did not adhere to. The St. Martin group disagrees, saying that the trial judge on remand did as directed. In any scenario, the May 19, 1999 decree was issued before the complete trial and cannot be considered "law of the case" except to the extent that summary adjudication was inappropriate and that a thorough trial was imperative.
In any event, the question of whether the 1971 conveyance established one large contiguous servitude or two or more noncontiguous servitudes was not directly before this Court when summary judgment was set aside and the case remanded.

ASSIGNMENT NO. 2
In this allegation of error, EDC argues that the trial judge wrongfully rejected proof of the nature, extent and (interruption of) prescription of its mineral rights in the "Protective Area."
The May 3, 1971 conveyance did not describe the area in Terrebonne Parish covered by the servitude except by reference to Terrebonne Parish COB 496, Entry No. 38344, which is the fee title conveyance from Southdown, Inc. to Southdown Lands, Inc. The entry at COB 496 contains property descriptions by reference to various recorded instruments, including an Act of Mortgage dated September 8, 1944 by Realty Operations, Inc., in favor of Jefferson Standard Life Insurance Company, registered in Terrebonne Parish MOB 90, folio 342. This 20-page act contains descriptions of many and varied parcels of land.
EDC contends, accordingly, that the 1971 instrument conveyed a mineral servitude on the subject "Protective Area" and *485 other contiguous lands by reference to a previously recorded conveyance (from Southdown, Inc., to Southdown Lands, Inc.), which in turn contained a property description by reference to a previously recorded mortgage (the 1944 act). This, EDC submits, is a three-link chain of recorded instruments with an ascertainable property description constituting real, visible notice to third parties contained in the 1944 mortgage.
As plaintiff, EDC have bore the burden of proving its case. EDC submitted 179 documents and the testimony of three witnesses, primarily that of its expert Ralph Gipson, who manages the New Orleans branch office of C.H. Fenstermaker and Associates, a land surveying firm headquartered in Lafayette, Louisiana. Mr. Gipson did not survey anything in or around land owned by the St. Martin group; instead, he testified from information, charts, etc., pulled from the Fenstermaker data base.
Mr. Gipson produced various documents and computer-generated plats showing where he thought the "Protective Area" was located. His main exhibit, the "Fenstermaker base map," is a composite of data and information from various sources not contained in public records. Regarding the "Fenstermaker base map," Mr. Gipson was asked this question: "What degree of confidence do you have that you have, in your hand-colored maps and in your computer-generated copy, located the geographical extent of the large continuous area, including the property which is the subject of this suit, that is the Protective Area described in the August 31, 1966 agreement, by reference to the Mortgage (of 1944)...?"
He said that he had "complete confidence" that the hand-colored map was "an accurate portrayal of the mortgage area" and that the land involved was a single, large contiguous tract. This is an important factor in EDC's claim because drilling on any part of a large contiguous area would interrupt prescription on the whole. There had been no drilling in the "Protective Area" in dispute to defeat prescription, although evidence shows drilling elsewhere.
Mr. Gipson admitted, however, that no actual surveys had been done by him or anyone under his direction. He explained that an on-the-ground survey would involve a search for physical occupation and monuments; this information would then be analyzed and plotted and inverted into a map. Such a procedure, Mr. Gipson said, would be time consuming and very expensive. None of the documents Mr. Gipson testified from, particularly the "Fenstermaker base map," was what he called "a boundary survey" and he added that he was "not going to sign this thing and say that it is."
Regarding the land covered in the 1966 lease, Mr. Gipson said that "... certainly a survey would have solved that issue. I guess we wouldn't be here if it had been surveyed."
Even though the 1966 conveyance did not contain any surveys, it did grant certain mineral rights on noncontiguous tracts of land in the "Protective Area." While the parties appear to agree that this conveyance granted mineral rights to noncontiguous tracts of land, they differ on their interpretation of the 1971 conveyance. EDC believes that the 1971 conveyance granted mineral rights on a single contiguous tracts of land, which included the noncontiguous tract listed in the 1966 conveyance. The St. Martin group contends that the 1971 conveyance did not form one single contiguous servitude which included the "Protective Area," but instead created two noncontiguous tracts. The trial court held that the testimony and evidence established that the properties in question were not contiguous and that, because they are not contiguous, the drilling on certain tracts of land by EDC did not interrupt the prescription of nonuse as to all of the tracts of land, including those owned by the St. Martin group.
*486 Also, the trial judge found that the "Protective Area" was sufficiently burdened by the 1966 conveyance to except it from the 1971 conveyance, in accord with the clause in the 1971 conveyance excepting "mineral rights heretofore conveyed or transferred ... or terminated by prescription."
In reaching these conclusions, the trial judge obviously was guided by the testimony of Charles Camp, the St. Martin group's expert with 26 years experience as vice president in charge of land surveying for T. Baker Smith and who had done on-the-ground surveys of land in and around the St. Martin tracts. He stated that he had "actually gone out there" and surveyed the land involved in this lawsuit "many times."
Mr. Camp disagreed with Mr. Gipson's calculations, as did the trial judge in his 19-page "Reasons for Judgment."
To show the existence of one large contiguous tract stemming from the 1971 conveyance and ultimately the 1944 mortgage, Mr. Gipson made use of various maps, plots and descriptions which were in no way related or connected to the 1944 mortgage. Mr. Camp's surveys and his direct testimony showed, as he stated, that "... the property is not contiguous."
The trial judge also found that because Southdown, Inc. was obligated by the 1966 deed to transfer rights, title and interest to any sand in the "Protective Area" when and if there was production or the capability of production, this impediment prohibited Southdown, Inc. from conveying mineral rights to any other party. Such a burden, the trial judge said, constituted "a mineral right heretofore conveyed" and was within the scope of the exclusion clause of the May 3, 1971 conveyance.
On review of all of the testimony and consideration of all pertinent documents, particularly the 1971 conveyance, the title sale of Southdown, Inc. to Southdown Lands, Inc., the 1966 deed, the 1944 mortgage and the various maps and/or charts purporting to show the "Protective Area," we see no manifest error, especially in the trial judge's reliance on Mr. Camp's conclusions and opinions.

ASSIGNMENT NO. 3
Here, EDC contends that the trial judge erred in deciding that the property description in the 1971 conveyance was omnibus and was not sufficient under Louisiana law to put third parties like the St. Martins on notice that, for the sum of $100.00, the "Protective Area," along with considerable other real estate, was encumbered by the mineral lease.
There is no mention of the "Protective Area" in the 1971 conveyance. Third parties are referred to "COB 496, entry 383344, in Terrebonne Parish," which is the Southdown, Inc. to Southdown Lands, Inc. sale. Third parties are then referred by this act to the multi-paged 1944 mortgage in MOB 90, folio 342, Terrebonne Parish. Neither the "Protective Area" nor the servitude area claimed by EDC are described nor even mentioned in the 1944 mortgage. The mortgage does list various plantations and other parcels of land, beginning with the Ardoyne Plantation, but no surveys are attached.
The Louisiana Supreme Court and other state courts have consistently held that property descriptions must be sufficiently specific so that third parties can locate and identify the property. The general rule is that the description must fully appear within the four corners of the instrument or that the deed should refer to some map, plat or another deed as part of the description, so that the same may be clear.
Clearly, an adequate description of EDC's alleged servitude does not appear in the 1971 conveyance, wherein the only reference to the Terrebonne Parish property is the COB and entry numbers. An adequate description is not contained in the Southdown, Inc. to Southdown Lands, Inc. deed, which only refers third parties *487 to the 1944 mortgage. The 1944 mortgage, Mr. Gipson admitted, is a "conglomerate of earlier descriptions" of various tracts of land and cannot serve as a sufficient property description of EDC'S claimed servitude area. Even the expert land surveyors had difficulty deciding on the servitude's boundary. In Mr. Gipson's testimony trying to fix the location of EDC's servitude from information contained in the 1944 mortgage, he relied on maps, plats and descriptions which are not part of the public records and which were certainly not within the four corners of either the 1971 conveyance, the Southdown, Inc. to Southland Lands, Inc. sale, or even the 1944 mortgage itself.
Attached to and made part of this opinion is the wordy 1944 mortgage, which EDC argues contains a legally sufficient description of property mentioned only by COB reference in the 1971 conveyance and by MOB reference in the Southdown, Inc. to Southland Lands, Inc. act. We are, however, unaware of any Louisiana Supreme Court or appellate court opinion approving a three-step property description when the third and key step is a description as inexact (as far as EDC's servitude and the "Protective Area" are concessed) of the 1944 mortgage.
Mr. Gipson began his description of the purported servitude by referring to "Parcel B" on the fifth page of the mortgage. Third parties lack Mr. Gipson or Mr. Camp's expertise and even the expert land surveyors differed as to where EDC's alleged servitude was situated.
The trial judge stated that in Mr. Gipson's struggle to interpret the 1944 mortgage and describe the purported servitude," he (Gipson) referred to more than 100 documents which were not referred to in either the 1971 conveyance or in the 1944 mortgage. The trial judge found that EDC had not established the boundaries of its servitude by and from information pulled from the 1944 mortgage and that consequently there could not have been legally adequate notice to third parties. This determination is supported by testimony and evidence.
This Court's earlier decree vacating summary judgment stated that the property description in the 1971 conveyancei.e., COB 496, entry number 383344has adequate notice to third parties because the reference is to another conveyance in the public records (the Smithdown, Inc. to Southland Lands, Inc. sale). We note two things. Firstly, this issue was not there before this Court. There had been no trial; the record did not fully contain testimony about the extreme difficulty of extracting even approximate servitude boundaries from the 1944 mortgage. Secondly, if this Court's earlier declaration on this issue can be construed as "law of the case," which we do not believe it can, then it would be appropriate for this Court now to revisit this issue to correct palpable error and prevent manifest injustice. Testimony and evidence addressed at trial would mandate a recommendation of the earlier opinion, except with regard to the remand order because of triable issues.
The trial court judgment of December 17, 1999 is affirmed.
AFFIRMED.
*488 
*489 
*490 
*491 
*492 
*493 
*494 
*495 
*496 
*497 
*498 
*499 
*500 
*501 
*502 
*503 
*504 
*505 
*506 
*507