880 So.2d 129 (2004)
MANDALAY OIL & GAS, L.L.C. and Voyager Petroleum, Inc.
v.
ENERGY DEVELOPMENT CORP., Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc.
No. 2001 CA 0993.
Court of Appeal of Louisiana, First Circuit.
August 4, 2004.
Rehearing Denied August 31, 2004.
*130 Bernard F. Levy, Houma, Counsel for Plaintiffs Mandalay Oil & Gas, L.L.C. and Voyager Petroleum, Inc.
*131 David R. Richardson, James A. Barton, III, Gerald F. Slattery, Jr., John Weathington, III, Stephen B. Panus, New Orleans, Raymond G. Hoffman, Jr., Metairie, Patrick W. Gray, Jamie D. Rhymes, Lafayette, Counsel for Defendant-Appellee/Appellant-in-Rule Energy Development Corp.
A.J. Gray, III, Lake Charles, Timothy C. Ellender, Jr., Houma, Counsel for Defendants-Appellants/Appellees-in-Rule Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc.
Before: CARTER, C.J., PARRO and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
On September 14, 1998, Mandalay Oil & Gas, L.L.C. (Mandalay) and Voyager Petroleum, Inc. (Voyager) jointly filed this concursus proceeding against Michael X. St. Martin, Virginia Rayne St. Martin (the St. Martins), Quality Environmental Processes, Inc. (Quality), and Energy Development Corporation (EDC). Mandalay and Voyager initiated the proceeding to determine the proper parties entitled to the distribution of a portion of natural gas royalty proceeds attributable to production from two tracts of landConcursus Tract 1 and Concursus Tract 2.
The pertinent tracts are contained within the KBR RA SUA unit of the Lake Hatch-Sunrise Field (the Sunrise Field) in Terrebonne Parish and are more properly described as:
Two (2) certain tracts of land located in Terrebonne Parish, Louisiana, identified as Tract 1 and Tract 2 and depicted on that map or plat entitled "Mandalay Oil & Gas, L.L.C. KBR RA SUA St. Martin/EDC No. 1 Located in Section 1, T18S-R16E, Sections 65 & 66, T17S-R16E, Sections 66, 65, 64 & 63, T17S-R17E, Section 16, T18S-R17E, Terrebonne Parish, Louisiana," which map or plat is recorded at COB 1614, folio 83, entry number 1025668 of the records of the Terrebonne Parish Clerk of Court.
Prior to trial, the parties stipulated that Concursus Tract 1 is located within a section of the Sunrise Field known as the "Protective Area." Concursus Tract 2 lies outside and to the northeast of the Protective Area. According to the petition, Mandalay leased the relevant tracts from the St. Martins and Quality (collectively, the St. Martin Group), while Voyager leased the same tracts from EDC. The St. Martin Group and EDC each dispute the right of the other to receive the royalty proceeds at issue, each claiming exclusive rights thereto.

RELEVANT TITLE DOCUMENTS
A brief discussion of the relevant title documents is necessary to understand the relative positions of the parties. On August 31, 1966, Southdown, Inc. conveyed to Southdown Exploration, Inc. all of its right, title, and interest in and to the oil, gas, and other minerals within eight separate, non-contiguous areas located in four parishes (the 1966 mineral conveyance). These areas, which were then producing hydrocarbons, were referred to as the "Productive Area" in the conveyance. Attached to the conveyance as Exhibits A through H were eight maps or plats illustrating these areas located in St. James, Lafourche, Terrebonne, and Ascension parishes. The parties agreed to cause an accurate survey of the areas shown in the plats to be made and attached to the conveyance *132 in place of these exhibits; however, no such survey was ever made or recorded. Also attached to the 1966 mineral conveyance was a list of certain sands known to be productive or capable of production in the Protective Area. No legal description of these Known Productive Sands is provided anywhere in the 1966 mineral conveyance.
In the Sunrise Field, the relevant Protective Area surrounded the Productive Area on three sides.[2] These sands were subject to the following special provision:
As an essential and integral part of the consideration paid for this conveyance, Grantor binds and obligates itself to convey to Grantee, from time to time as required, all of its right, title and interest in and to the oil, gas and other minerals in each Known Productive Sand when and if such sand is established to be productive or capable of production in the Protective Area. It shall be considered that a Known Productive Sand in the Protective Area will have been established to be productive or capable of production when a well located in the Protective Area is completed in such sand as a producer or as a well capable of production of oil or gas, or whenever any Known Productive Sand in the Protective Area shall have been included within the geographical confines of a unit created for such sand by or pursuant to an order of the Louisiana Department of Conservation or other governmental agency having jurisdiction to create units if said unit has, as the unit well, a well productive or capable of production. If and when any Known Productive Sand is established to be productive or capable of production within the Protective Area as above provided, Grantor shall then be obligated to convey to Grantee the mineral rights in such Known Productive Sand as to the entirety of that Protective Area; and this obligation shall exist irrespective of whether the productive portion of the Protective Area forms a common reservoir with the present Productive Area of said Known Productive Sand or is separated therefrom.
* * *
Each obligation to make such additional mineral conveyances as to Known Productive Sands shall arise immediately and automatically whenever any Known Productive Sand is established to be productive or capable of production in any portion of the Protective Area as provided above. This agreement and obligation of Grantor is and shall be a continuing one which shall be binding during the entire life of the mineral ownership of Grantee in the respective Productive Areas; provided, that Grantor's obligation under this agreement shall terminate and no longer be effective as to any mineral servitude created hereunder which may have prescribed. As heretofore provided, conveyances shall be made from time to time whenever the conditions set forth above shall occur, and the execution of the conveyance of mineral rights in an area or as to one Known Productive Sand shall not relieve Grantor of the obligation to make additional conveyances in the same area or as to additional Known Productive Sands if the conditions set forth above requiring such additional conveyances thereafter occur. Each conveyance shall be effective as of the date that a Known Productive Sand, or Known Productive Sands, is established to be productive or capable of production in the Protective Area. Each obligation of *133 Grantor to make an additional assignment shall be subject to enforcement through specific performance by Grantee.
Subsequent to the execution of the 1966 mineral conveyance, Southdown Exploration, Inc. (a Louisiana corporation) was merged into Southdown Exploration, Inc. (a Delaware corporation) and became Southdown Burmah Oil Company by name change dated April 25, 1967. Thereafter, Southdown Burmah Oil Company transferred 40% of all its assets, including the mineral servitudes and mineral rights acquired under the 1966 mineral conveyance, to Pelto Oil Company (Pelto), EDC's predecessor in title. Southdown Burmah Oil Company subsequently became Burmah Oil Development, Inc. by name change dated February 12, 1970.
By 1970, as a result of the foregoing conveyances and transactions, title to the relevant lands remained with Southdown, Inc., and the mineral servitudes and mineral rights affecting the Productive and Protective Areas in the Sunrise Field created by the 1966 mineral conveyance were owned 60% by Burmah Oil Development, Inc. and 40% by Pelto. On June 17, 1970, Southdown, Inc. conveyed the relevant properties to Southdown Lands, Inc. (the 1970 conveyance). An exhibit attached to the conveyance listed the properties conveyed and described them only by reference to previously recorded documents, including a 1944 mortgage. In 1971, Southdown Lands, Inc. purported to convey to Pelto the following:
[A]ll of its right, title, and interest in and to all oil, gas and other minerals located in, on or under all lands now or formerly owned by Vendor, wherever situated, including but not limited to, the lands listed on the Exhibit attached hereto as Exhibit A.
This conveyance (the 1971 mineral conveyance) also contained the following express exception:
There is excepted from the Conveyance here made all lands and mineral rights heretofore conveyed or transferred by Vendor or its predecessors in title to third parties or terminated by prescription.
The 1971 mineral conveyance also did not contain a property description, but it did refer to the 1970 conveyance, which incorporated the property description from the 1944 mortgage by reference.
The parties stipulated prior to trial that, subsequent to the above conveyances, the St. Martins acquired the relevant property as the result of a series of conveyances culminating in a cash sale deed by Contran Realty Corporation to the St. Martins in 1992. Quality obtained an undivided 10% mineral interest in the property in 1994, by virtue of a conveyance from the St. Martins. Therefore, as of June 23, 1992, the land at issue was owned by the St. Martins, subject to any outstanding pre-existing mineral rights and servitudes owned by EDC and others, and further subject to the transfer to Quality in 1994.

POSITIONS OF THE PARTIES
EDC argues that it is entitled to all of the royalties because it is the owner of a mineral servitude covering the two concursus tracts and other contiguous lands. According to EDC, a single, large, contiguous servitude was conveyed to its predecessor in title pursuant to the 1971 mineral conveyance. EDC further alleges that it has adequately maintained this servitude through operations and production, either on the subject concursus tracts or on other contiguous lands contained within its servitude. Because in its view the servitude is contiguous, EDC argues that maintenance of a part of the servitude constitutes maintenance *134 of the whole, sufficient to prevent extinguishment of the servitude through prescription for nonuse.
The St. Martin Group, on the other hand, bases its claim to ownership of the royalties on its ownership of the surface of the concursus tracts. The St. Martin Group contends that EDC does not own any servitude affecting the concursus tracts, either because no servitude was ever conveyed to EDC, or because the servitude has been extinguished by prescription of nonuse for a period of at least ten years. In support of these contentions, the St. Martin Group first argues that the 1971 mineral conveyance, upon which EDC bases its claim to a servitude, did not contain a property description adequate to put third parties on notice as to what property was encumbered. Secondly, the St. Martin Group argues that even if a servitude were conveyed to EDC's predecessor in 1971, the servitude was not the single, large, contiguous servitude claimed by EDC. According to the St. Martin Group, this lack of contiguity is due to the fact that no rights to the Protective Area could be conveyed to anyone in the 1971 mineral conveyance, because that area was sufficiently burdened by the 1966 mineral conveyance to except it from the 1971 mineral conveyance. Without contiguity, maintenance of part of the servitude does not constitute maintenance of the whole. Therefore, the St. Martin Group argues that the mineral rights have reverted back to it as the owner of the surface due to prescription of nonuse.

PROCEDURAL HISTORY
A trial on the merits was held in this matter in April of 2000, after which the court took the matter under advisement. On September 29, 2000, the trial court issued a written judgment declaring EDC to be the owner of all of the natural gas royalty proceeds attributable to production from the two concursus tracts. On October 16, 2000, the trial court issued written findings of fact and reasons for judgment, in which it specifically found that the property description in the 1971 mineral conveyance was sufficient to put third parties on notice as to which properties were affected. The trial court further found that EDC had established the existence of a single, large, contiguous servitude, which had been maintained sufficiently to avoid prescription. In connection with this finding, the trial court determined that the 1966 mineral conveyance had not created any mineral rights in the Protective Area that would cause it to be excepted from the 1971 mineral conveyance. The St. Martin Group appealed.
In addition to its appeal of the trial court's decision on the merits, the St. Martin Group filed a peremptory exception in this court raising the objection of res judicata for the first time in this matter. The exception was based on a judgment rendered by the 24th Judicial District Court in Jefferson Parish in 1999 (the Jefferson Parish judgment), in a suit for declaratory judgment filed by EDC against the St. Martin Group. This court stayed the appeal and remanded the matter to the trial court in Terrebonne Parish for a hearing on the exception of res judicata. Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 01-0993 (La.App. 1st Cir.7/3/02), 867 So.2d 709. After a hearing, the trial judge sustained the exception of res judicata by judgment dated January 20, 2003, and EDC filed a suspensive appeal of that decision. In addition to the original appeal on the merits filed by the St. Martin Group and EDC's appeal of the trial court's ruling on the issue of res judicata, EDC has now filed a peremptory exception pleading the objection of res judicata in this court based on the judgment *135 of a federal court in another related matter.[3]

APPLICABLE LAW
Louisiana Revised Statute 13:4231 provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
In addition, Article 531 of the Louisiana Code of Civil Procedure provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all. [Emphasis added.]
Res judicata is an issue and claim preclusion device found in both federal law and state law. The purpose of both federal and state law on res judicata is essentially the sameto promote judicial efficiency and final resolution of disputes by preventing needless relitigation. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, pp. 11-12 (La.1/16/96), 666 So.2d 624, 631. A judgment determining the merits of a case, in whole or in part, is a final judgment. La.Code Civ. P. art. 1841. The preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and bars any action filed thereafter, unless the judgment is reversed on appeal. La. R.S. 13:4231, comment (d).
Under La. R.S. 13:4231, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Terrebonne Fuel, 95-0654 at p. 12, 666 So.2d at 632. Furthermore, the doctrine of res judicata is not discretionary and mandates the effect to be given to final judgments. Leon v. Moore, 98-1792, pp. 4-5 (La.App. 1st Cir.4/1/99), 731 So.2d 502, 505, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20; cf. La. R.S. 13:4232.
La. R.S. 13:4231 embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). Under claim preclusion, the res judicata *136 effect of a final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: (1) foreclosure of relitigating matters that have never been litigated, but should have been advanced in the earlier suit; and (2) foreclosure of relitigating matters that have been previously litigated and decided. Hudson v. City of Bossier, 33,620, p. 7 (La.App.2d Cir.8/25/00), 766 So.2d 738, 743, writ denied, 00-2687 (La.11/27/00), 775 So.2d 450.

EDC'S EXCEPTION OF RES JUDICATA
EDC's exception raising the objection of res judicata in this court is based, in part, on a judgment involving the same parties and rendered by the United States Fifth Circuit Court of Appeals on June 27, 2002, entitled Energy Development Corp. v. St. Martin, 296 F.3d 356 (5th Cir.2002), cert. denied, 538 U.S. 962, 123 S.Ct. 1763, 155 L.Ed.2d 514 (2003). EDC also filed the same exception in the Terrebonne Parish trial court after this matter had been remanded for consideration of the exception of res judicata filed in this court by the St. Martin Group. Because the exception was initially filed in the trial court, the St. Martin Group contends that EDC's exception is not properly before this court.
Res judicata is an objection usually raised in the trial court by a peremptory exception. Such an exception may be filed at any point in the proceedings in the trial court prior to the submission of the case for a decision. La.Code Civ. P. arts. 927 & 928. A peremptory exception may also be filed for the first time in the appellate court, pursuant to La.Code Civ. P. art. 2163, which provides, in pertinent part:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
The record demonstrates that the Terrebonne Parish district court conducted the final hearing on the St. Martin Group's exception of res judicata on December 13, 2002, after which the court took the matter under advisement. EDC did not file its exception of res judicata until January 2, 2003. This was clearly after the matter had been submitted for decision, and pursuant to La.Code Civ. P. art. 928(B), the trial court could not consider the exception. Moreover, the matter had been remanded to the trial court strictly for the purpose of a hearing on the exception of res judicata filed in this court by the St. Martin Group. This court retained jurisdiction of the appeal. Therefore, the trial court was not in a position to entertain any other exceptions or pleadings.
EDC then timely filed the exception in this court prior to the submission of the matter for decision. Therefore, the exception is properly before this court.[4]See Johnson v. Morris, 431 So.2d 429, 431 *137 (La.App. 4th Cir.), writ denied, 437 So.2d 1151 (La.1983); Martin v. City of Baton Rouge, 00-0896 (La.App. 1st Cir.6/22/01), 858 So.2d 440, 444.
In its exception, EDC contends that the issue of the preclusive effect of the Jefferson Parish judgment, which was also the issue raised by the St. Martin Group's exception of res judicata, has already been determined by the United States Fifth Circuit Court of Appeals, and that this court is bound by that determination. The federal appellate court was faced with a similar situation to the one this court faced when this matter was previously before us. EDC had prevailed in the United States District Court for the Eastern District of Louisiana, and that court had entered a judgment in favor of EDC on January 17, 2001. The St. Martin Group had appealed the merits of that decision, but had also filed a peremptory exception raising the objection of res judicata, asserting the preclusive effect of the 1999 Jefferson Parish judgment for the first time in the federal litigation.
EDC argues that the St. Martin Group raised the same arguments in support of its res judicata exception in the federal litigation as it has in this matter, and that the federal appellate court rejected those arguments. EDC further contends that in rejecting those arguments, the federal appeals court made certain specific findings regarding the limits of the Jefferson Parish judgment that bind this court.[5] We disagree.
Contrary to EDC's representations, the federal appeals court did not truly reject the St. Martin Group's res judicata defense. In fact, as the court's opinion makes clear, the court simply chose not to consider the exception at the appellate stage of the litigation. Energy Development Corp., 296 F.3d at 357. In deciding not to consider the exception, the federal appeals court acknowledged that the Jefferson Parish judgment became final for res judicata purposes prior to the date of the federal district court's decision.[6] In fact, the court suggests that because the Jefferson Parish judgment was final before the federal district court judgment was rendered, the St. Martin Group could have and should have raised its res judicata defense in the district court. Energy Development Corp., 296 F.3d at 360-361. Because the St. Martin Group failed to raise the defense at that level, the federal appellate court decided not to consider the exception, stating:

*138 Federal Rule of Civil Procedure 8(c) lists res judicata as one of the defenses that must be affirmatively pled. Our decisions in the above cases start from the premise that failure to raise this defense in the district court generally precludes the district court and appellate courts from considering the defense. However, these cases also recognize that in a narrow, well-defined class of cases, the defense of res judicata may be considered for the first time on appeal. These cases hold that an appellate court can address res judicata for the first time on appeal, but only to affirm the district court's judgment and only if all of the relevant facts are contained in the record and are uncontroverted. St. Martin asserts the defense to reverse the district court.
Energy Development Corp., 296 F.3d at 361 [Citations omitted].
The court acknowledged that one of its decisions, American Furniture Co., Inc. v. International Accommodations Supply, 721 F.2d 478 (5th Cir.1981), allowed a party to assert res judicata for the first time on appeal to reverse a district court judgment. Again, however, the court emphasized the rule that this could only be done where all of the relevant facts were contained in the record and were uncontroverted. American Furniture Co., 721 F.2d at 482. The federal appellate court determined, however, that the case before it was distinguishable from American Furniture, because the facts necessary for the application of the defense were not found in the trial court record and were not uncontroverted. Therefore, the court reasoned, it was not required to apply res judicata when the defense was not asserted in the trial court. Energy Development Corp., 296 F.3d at 362. Because it chose not to consider the exception on what are essentially procedural grounds, the court's alleged findings regarding the limits of the Jefferson Parish judgment are irrelevant to its decision, and are merely dicta. Thus, they do not bind this court, and EDC's exception of res judicata is without merit. See La. R.S. 13:4231; Scott v. American Tobacco, Co., 98-3016 (La.2/26/99), 731 So.2d 189 (per curiam).

THE ST. MARTIN GROUP'S EXCEPTION OF RES JUDICATA
As mentioned previously, the St. Martin Group originally filed its exception of res judicata in this court, and we remanded the issue to the Terrebonne Parish trial court for consideration, while retaining jurisdiction of the appeal. After a hearing, at which both sides were allowed to present evidence, the trial court sustained the exception of res judicata, thereby recognizing the preclusive effect of the 1999 Jefferson Parish trial court judgment on issues raised in the Terrebonne Parish concursus proceeding.
EDC filed the Jefferson Parish suit on July 7, 1997, prior to the commencement of the instant concursus proceeding by Mandalay and Voyager. In the suit, EDC sought a declaratory judgment recognizing it to be the owner of a mineral servitude in the Protective Area of the Sunrise Field in Terrebonne Parish. EDC additionally sought a permanent injunction preventing the St. Martin Group from interfering with its right to the use and enjoyment of the servitude. The St. Martin Group reconvened, seeking declaratory and injunctive relief as well.
EDC alleged in the Jefferson Parish petition, as it subsequently did in the Terrebonne Parish suit, that its relevant mineral rights and servitudes were not governed by the terms of the 1966 mineral conveyance. Instead, EDC argued that its predecessor in title had obtained a single, *139 large, contiguous servitude covering the Protective Area and other lands pursuant to the 1971 mineral conveyance, and that this servitude had been maintained sufficiently to avoid prescription. The St. Martin Group also argued, consistent with its allegations in the Terrebonne Parish proceedings, that EDC's rights in the Protective Area were governed by the 1966 mineral conveyance. Because there had been no mineral operations on the property until more than ten years after the date of the 1966 mineral conveyance, the St. Martin Group contends that any servitude that may have existed in the Protective Area had prescribed. Moreover, the St. Martin Group questioned the validity of the 1971 mineral conveyance, arguing that the property description was insufficient to put third parties on notice.
The Jefferson Parish matter went to trial in October of 1999. On December 17, 1999, the trial court rendered a judgment against EDC and in favor of Quality.[7] In its judgment and related written reasons, the trial court found that the mineral servitudes and rights burdening the Protective Area of the Sunrise Field originated from the 1966 mineral conveyance and had been extinguished by prescription based on ten years of nonuse. In addition, the trial court determined that the 1971 mineral conveyance did not transfer a single, large, contiguous servitude to EDC's predecessor in title, because the omnibus property description in the conveyance was not adequate to put third parties on notice as to what properties were being encumbered.
In contrast to the judgment of the Jefferson Parish court, the Terrebonne Parish trial court initially decided the merits of the instant concursus matter in favor of EDC. Although the two proceedings involved partially different and overlapping property,[8] they did involve several common issues. Like the Jefferson Parish court, the Terrebonne Parish court was called on to determine the effect of the 1966 and 1971 mineral conveyances. In addition, the parties acknowledged that in presenting these issues to the Terrebonne Parish court for determination, they introduced the same evidence and witness testimony they had used in the Jefferson Parish proceedings. Unlike the Jefferson Parish court, however, the Terrebonne Parish court reached very different conclusions regarding the effects of those documents. Specifically, the Terrebonne Parish court determined that (1) the 1966 mineral conveyance did not create any mineral servitudes or transfer any ownership in the Protective Area; (2) the property description in the 1971 mineral conveyance was adequate to put third parties on notice as to what properties were affected; and (3) the 1971 mineral conveyance created one large, contiguous mineral servitude in favor of EDC's predecessor in title. These three findings are in direct conflict with the findings of the Jefferson Parish court on the same issues.
On remand of this case, the Terrebonne Parish court recognized this conflict and sustained the St. Martin Group's exception of res judicata. In its reasons for judgment, the court stated:

*140 This court's judgment in the Terrebonne Parish case was based on its determination that the 1971 Mineral Conveyance did create mineral rights or servitudes that ultimately favored EDC and that the property description in the 1971 Mineral Conveyance was adequate to affect third parties. The Jefferson Parish judgment was based on its determination that the 1971 Mineral Conveyance did not create mineral rights or servitudes that ultimately favored EDC and that the property description in the 1971 Mineral Conveyance was not adequate to affect third parties. These issues actually were litigated in the Jefferson Parish proceeding and both were resolved against EDC. The resolution of both of these issues was essential to the Jefferson Parish decision; a contrary ruling with regard to both issues necessarily would have resulted in a judgment in favor of EDC. [Emphasis in original.]
The court went on to state that it was required by principles of issue preclusion or collateral estoppel to accept and apply the Jefferson Parish court's resolution of those issues. EDC has appealed the Terrebonne Parish court's decision, arguing that res judicata principles are inapplicable because (1) there was no identity of parties between the two suits, and (2) the finding that the property description in the 1971 mineral conveyance was inadequate to affect third parties was not essential to the Jefferson Parish judgment.

Identity of Parties
La. R.S. 13:4231 requires "identity of the parties" in order to preclude a subsequent suit, by providing that "a valid and final judgment is conclusive between the same parties." Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1054. Without identity of the parties in the first and subsequent actions, an exception of res judicata will not be maintained. Identity of parties exists whenever the same parties, their successors, or others appear, so long as they share the same "quality" as parties. Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La. 1978).[9]
EDC does not deny that the same parties were involved in both proceedings. EDC does argue, however, that the St. Martins cannot assert a plea of res judicata because they were not parties to the Jefferson Parish judgment.[10] The judgment *141 does not mention the St. Martins at all, except in passing when listing the presence of their attorney, and then only as "Quality Environmental Processes, Inc., et al." Later, the judgment finds the evidence to be against EDC and in favor of Quality, but does not state "Quality, et al." Throughout the trial court's written reasons for judgment, however, the court referred to the defendants as the St. Martin Group and clearly indicated that its judgment was in favor of all defendants. According to EDC, the court's omission of the St. Martins as a prevailing party in the judgment signifies that the St. Martins are deemed to have lost in the Jefferson Parish suit.[11]Cf. e.g. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532, 533 (La. 1988). Therefore, EDC argues, the St. Martins cannot assert res judicata because the judgment was not in their favor.[12]
EDC further argues that the Louisiana Fifth Circuit Court of Appeal has already determined the issue of whether or not the St. Martins are actually parties to the Jefferson Parish judgment. After the 1999 Jefferson Parish judgment was affirmed on appeal,[13] the St. Martin Group filed a rule to provide a more complete property description, by which they attempted to amend the 1999 Jefferson Parish judgment. In addition to the changes and additions to the property description, the St. Martin Group also sought to add the St. Martins as named parties to the judgment. The trial court signed a new judgment making these changes, and EDC appealed. On appeal, the court annulled the amended judgment and reinstated the 1999 judgment. Energy Development Corp. v. Quality Environmental Processes, Inc., 02-221, p. 9 (La.App. 5th Cir.11/26/02), 834 So.2d 513, 518.
According to EDC, the appellate court considered the addition of the St. Martins to the judgment to be a substantive amendment, which was not proper under La.Code Civ. P. art. 1951. Again, however, EDC overstates the facts. It is true that the appellate court annulled the new judgment and reinstated the 1999 judgment; however, it did so after considering *142 only the amendments involving the property description. After finding that the additional property descriptions constituted an impermissible substantive amendment of the judgment, the court annulled the amending judgment and reinstated the original judgment. The court specifically stated, however, that it did not need to reach the remaining issues raised by EDC once it had made that decision. Energy Development Corp., 02-221 at p. 9, 834 So.2d at 518. Therefore, the appellate court never addressed the issue of the addition of the St. Martins to the judgment.
As noted in Terrebonne Fuel, 95-0654 at pp. 11-12, 666 So.2d at 631, Louisiana's res judicata law was broadened by the 1990 amendment and is now in line with federal provisions. Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the "privies" of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action, who may be considered the "virtual representative" of the nonparty, because the interests of the party and the nonparty are so closely aligned. Certified Finance, Inc. v. Cunard, 01-0797, p. 7 (La.App. 1st Cir.4/17/02), 838 So.2d 1, 4, writ denied, 02-1802 (La.10/14/02), 827 So.2d 424.
An examination of the provisions of the 1999 Jefferson Parish judgment indicates that the judgment basically determines certain issues raised by the parties. In all cases, the determinations were in line with the position espoused by the St. Martins and Quality, and against that position espoused by EDC, who was specifically named in the judgment. The fact that the judgment does not specifically state that the evidence is in favor of the St. Martins does not change the fact that the findings were actually in favor of the St. Martins. We also note that Quality could not have mineral rights in the subject property without the St. Martins, as the surface owners, also having mineral rights, since Quality only obtained its rights through a conveyance from the St. Martins. Quality's rights were not only derivative, but the St. Martins were Quality's co-owners of certain mineral rights. There was an identity of interests between Quality and the St. Martins sufficient to treat them as identical parties with respect to a declaratory judgment recognizing their common claim. We note that this was not a money judgment or a judgment determining liability. Instead, the court was called on to determine, by declaratory judgment, the effects of certain mineral conveyances. The court's findings regarding those documents as set forth in the judgment result in the recognition of rights in the St. Martins and Quality and further recognize that EDC does not have any rights as a result of those documents.

The 1971 Mineral Conveyance
A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment. La. R.S. 13:4231(3). There is no question that the issue of the effect of the 1971 mineral conveyance was fully litigated in the Jefferson Parish proceedings. EDC raised the issue itself in an effort to prove the existence of a single, large, contiguous servitude in its favor covering the Protective Area and surrounding lands. Now, however, EDC argues that the issue of the adequacy of the property description was not essential to the judgment. According to EDC, once the Jefferson *143 Parish court determined that the rights in the Protective Area were governed by the 1966 mineral conveyance and that those rights had prescribed, there was no longer any need to address the property description issue. Therefore, EDC argues, the court's resolution of that issue was simply gratuitous and cannot form the basis for issue preclusion. We disagree.
In June of 1998, the Jefferson Parish court ruled in favor of the St. Martin Group on summary judgment. In part, the court determined that all of the mineral rights in the Protective Area had been conveyed, at least conditionally, by the 1966 mineral conveyance. The Louisiana Fifth Circuit Court of Appeal found that genuine issues of material fact remained, vacated the judgment, and remanded the matter back to the district court for trial. Energy Development Corp. v. Quality Environmental Processes, Inc., 98-1125 (La. App. 5th Cir.5/19/99), 734 So.2d 965.
In addressing the trial court's interpretation of the 1966 mineral conveyance, the appellate court stated:
The 1966 instrument only conveyed a conditional future interest in the listed sands. All other mineral rights remained with the surface owner. The 1971 document conveyed "all of grantor's right, title and interest to all oil, gas and other minerals" located in the various tracts described by an attached exhibit, except what rights had been heretofore conveyed. As the 1966 obligation was limited to specific sands in the Protective Area, we find that there still existed mineral rights capable of being alienated in the Protective Area by the 1971 conveyance.
Energy Development Corp., 98-1125 at pp. 8-9, 734 So.2d at 970.
Subsequently, the court remanded the matter to the district court for determination of the questions of material fact as to the nature, extent, and prescription of EDC's mineral rights in the Protective Area pursuant to the 1971 mineral conveyance. Energy Development Corp., 98-1125 at p. 13, 734 So.2d at 972. Therefore, the issue of the validity of the 1971 mineral conveyance was still squarely before the trial court when the appellate court remanded the matter. Clearly, the determination regarding the validity of the property description in the 1971 mineral conveyance was essential to the Jefferson Parish court's decision, and EDC's argument is without merit.

Exceptional Circumstances
La. R.S. 13:4232 provides exceptions to the general rule of res judicata and provides, in pertinent part, that a judgment does not bar a subsequent action when exceptional circumstances justify relief from the res judicata effect of the judgment. This discretion to grant relief from the judgment for exceptional circumstances is necessary to allow the court to balance the principle of res judicata with the interests of justice. The court must exercise this discretion on a case-by-case basis and grant such relief only in truly exceptional cases, otherwise the purpose of res judicata would be defeated. La. R.S. 13:4232, comment1990. EDC argues that such exceptional circumstances apply in this case to bar the application of res judicata. Specifically, EDC argues that the St. Martin Group acquiesced in the piecemeal litigation of these mineral rights by not objecting to EDC's multiple lawsuits earlier.[14]
*144 This court addressed the application of this provision in Chaisson v. Oceanside Seafood, 97-2756 (La.App. 1st Cir.6/29/98), 713 So.2d 1286. After analyzing various cases in which the exceptional circumstances provision had been considered, this court stated:
These cases suggest that the "exceptional circumstances" provision is likely to be applied most often in complex procedural situations, in which litigants are deprived of any opportunity to present their claims because of some quirk in the system which could not have been anticipated. "Exceptional circumstances" might also be applied to factual scenarios that could not possibly be anticipated by the parties or decisions that are totally beyond the control of the parties.
Chaisson, 97-2756 at p. 6, 713 So.2d at 1289.
The case before us does not involve such a situation. EDC had a full opportunity to put on its case in Jefferson Parish. In fact, according to the evidence and admissions of the parties, EDC put on an identical case in Jefferson Parish; yet the findings of the two courts were very different. The purposes of res judicata final resolution of issues and the needless relitigation of issueswould be defeated if relief from the res judicata effect of the Jefferson Parish judgment were granted in this matter. Therefore, we decline to apply the exceptional circumstances provision under these circumstances.

CONCLUSION
For the foregoing reasons, we deny the peremptory exception raising the objection of res judicata filed by Energy Development Corporation. We affirm the trial court's judgment of January 20, 2003, sustaining the peremptory exception raising the objection of res judicata filed by Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc. Accordingly, we set aside the trial court's judgment of September 29, 2000, which found Energy Development Corporation to be the owner of all of the natural gas royalties attributable to production from the two concursus tracts. We hereby render judgment in favor of Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc., finding them to be the owners of all of the natural gas royalties attributable to production from the two concursus tracts, as a result of the Jefferson Parish judgment dated December 17, 1999. The Terrebonne Parish Clerk of Court is hereby ordered to pay to Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc. the principal amount of all sums deposited into the registry of the court in connection with this proceeding, together with all interest accrued thereon. All costs of this appeal are assessed to Energy Development Corporation.
EXCEPTION RAISING THE OBJECTION OF RES JUDICATA DENIED; JUDGMENT OF JANUARY 20, 2003, AFFIRMED; JUDGMENT OF SEPTEMBER 29, 2000, SET ASIDE; AND JUDGMENT RENDERED WITH ORDER.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The Sunrise Field was illustrated in Exhibit D attached to the 1966 mineral conveyance.
[3] The instant lawsuit and the Jefferson Parish lawsuit are just two of numerous lawsuits between these parties concerning their respective claims to the mineral rights in the concursus tracts and surrounding lands.
[4] We also note that EDC raised the same issues regarding the alleged preclusive effect of the federal appellate court's decision in its appeal after remand, in the event that the Terrebonne Parish trial court's silence concerning EDC's exception filed in that court could be interpreted as a denial of the exception. Therefore, the issue has been adequately raised before this court for determination.
[5] According to EDC, the federal appellate court determined that: (1) the Jefferson Parish judgment covered only the Protective Area; (2) the Jefferson Parish court's determination that the property description in the 1971 mineral conveyance was inadequate was not essential to the judgment and could not, therefore, provide the basis for issue preclusion; and (3) the Jefferson Parish court's finding that the property description in the 1971 mineral conveyance was inadequate was wrong.
[6] EDC has also argued, in the alternative, that the federal district court's decision should have preclusive effect on the Terrebonne Parish court, because it was allegedly the first final judgment among the three related cases that have gone to trial. The Jefferson Parish judgment was rendered by the trial court on December 17, 1999, and was affirmed by the Louisiana Fifth Circuit Court of Appeal on December 4, 2000. Energy Development Corp. Quality Environmental Processes, Inc., 00-314 (La.App. 5th Cir.12/4/00), 777 So.2d 481, writ denied, 01-0010 (La.3/9/01), 786 So.2d 734. The federal district court's judgment was not rendered until January 17, 2001. As the dates and the federal appellate court's acknowledgement make clear, the Jefferson Parish judgment was the first final judgment for res judicata purposes. See La. R.S. 13:4231, comment (d). Therefore, we need not address that argument further.
[7] The judgment initially lists the defendants as Quality Environmental Processes, Inc., et al. Later in the judgment, however, only Quality is listed, despite the fact that the St. Martins are listed throughout the trial court's written reasons that were issued the same day the judgment was rendered.
[8] The proceedings involved some overlap in the subject property. The Jefferson Parish proceedings involved the mineral rights in the Protective Area of the Sunrise Field. As mentioned previously, Concursus Tract 1 in the Terrebonne Parish proceeding was located within the Protective Area.
[9] Identity of persons obviously depends on the circumstances. Courts have held that there is an identity of persons in various situations, viz. a husband and a wife in Rollins v. Allstate Insurance Company, 02-330, p. 3 (La. App. 3rd Cir.10/2/02), 828 So.2d 677, 679; an ayant cause or assignee of a party, in Landmark Savings Bank, S.S.B. v. Bott, 583 So.2d 586, 588 (La.App. 3rd Cir.1991); a corporation and its president in Middleton v. Parish of Jefferson, 97-324, pp. 7-8 (La.App. 5th Cir.1/14/98), 707 So.2d 454, 457, writ denied, 98-0403 (La.3/27/98), 716 So.2d 896; the Office of Family Support, and the mother of a child in a previous paternity suit, as both representing the rights of the same child in State, Department of Social Services v. Coleman, 616 So.2d 844, 849 (La.App. 3rd Cir. 1993); LIGA as successor of an insurance company in Lastie v. Warden, 611 So.2d 721, 723 (La.App. 4th Cir.1992), writ denied, 614 So.2d 64 (La.1993); different representatives of the same class in a subsequent class action Duffy v. Si-Sifh, Corp., 98-1400, p. 9 (La.App. 4th Cir.1/9/99), 726 So.2d 438, 443, writ denied, 99-0372 (La.4/30/99), 741 So.2d 14.
[10] The Jefferson Parish judgment provides:

On the 25th, 26th and 27th days of October, 1999, this matter was tried before the Honorable Robert A. Pitre, Jr.
PRESENT: James Barton, III, attorney for ENERGY DEVELOPMENT CORPORATION, and A.J. Gray, III and John M. Mamoulides, attorneys for QUALITY ENVIRONMENTAL PROCESSES, INC., et al
After reviewing all pleadings, stipulations and evidence, and hearing the arguments of counsel, the court considering the law and the evidence to be in favor of the defendant-plaintiff in reconvention, Quality Environmental Processes, Inc., and against the plaintiff-defendant in reconvention, Energy Development Corporation. Accordingly;
IT IS ORDERED ADJUDGED AND DECREED that the mineral servitudes and rights burdening the Protective Area of the Sunrise Field stem from an instrument executed between Southdown, Inc. and Southdown Exploration, dated August 31 1966;
IT IS FURTHER ORDERED ADJUDGED AND DECREED that those mineral servitudes or mineral rights have been extinguished by the prescription based on ten (10) years nonuse;
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Omnibus property description attached as Exhibit "A" to the May 3, 1971 conveyance was not adequate to put third parties on notice as to which properties were being encumbered.
Judgment rendered and signed in Chambers on the 17th day of December, 1999, at Gretna, Louisiana.
 S/ Robert A. Pitre, Jr.

[11] Counsel for EDC acknowledged in oral argument before this court that he believed the omission was simply a mistake on the part of the trial court. Apparently, neither party noticed the omission until much later, because the St. Martins were involved in the appeal of the judgment as a prevailing party.
[12] It has not been suggested that Quality is not the same person as the person specifically named in the Jefferson Parish Judgment. Indeed the record indicates it is identically the same person; thus the plea of res judicata, in any case, would appear meritorious as to Quality.
[13] Energy Development Corp. v. Quality Environmental Processes, Inc., 00-314 (La.App. 5th Cir.12/4/00), 777 So.2d 481, writ denied, 01-0010 (La.3/9/01), 786 So.2d 734.
[14] Although the instant concursus proceeding was not filed by EDC, there are numerous other lawsuits between the parties concerning their relative claims to mineral rights based on the 1966 and 1971 mineral conveyances. All but one of these lawsuits, other than the concursus proceeding, were initiated by EDC.